**LAW OFFICE OF ROBERT L. TEEL**
ROBERT L. TEEL (SBN 127081)
*lawoffice@rlteel.com*
207 Anthes Ave., Suite 201
Langley, Washington 98260
Telephone: (866) 833-5529
Facsimile:  (855) 609-6911

**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
ALEXIS WOOD (SBN 270200)
*alexis@consumersadvocates.com*
KAS GALLUCCI (SBN 288709)
*kas@consumersadvocates.com*
WILLIAM B. RICHARDS, JR. (SBN 298552)
*bill@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile:  (619) 564-6665

***Attorneys for Plaintiff and the Proposed Class***

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JUAN ROMERO, FRANK TISCARENO, and KENNETH ELLIOTT, on behalf of themselves, and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SECURUS TECHNOLOGIES, INC,<br><br>Defendant. | Case No.: 16-cv-1283-JM-MDD<br><br>CLASS ACTION<br><br>**THIRD AMENDED COMPLAINT FOR:**<br><br>**(1)   INVASION OF PRIVACY, CAL. PENAL CODE § 636;**<br>**(2)   UNFAIR COMPETITION, CAL. BUS. & PROF. CODE §§ 17200,** *et seq.***;**<br>**(3)   CONCEALMENT;**<br>**(4)   FRAUD;**<br>**(5)   NEGLIGENCE; AND**<br>**(6)   UNJUST ENRICHMENT**<br><br>DEMAND FOR JURY TRIAL |

## INTRODUCTION

1.         Plaintiffs Juan Romero ("Romero"), Frank Tiscareno ("Tiscareno"), and Kenneth Elliott ("Elliott"), individually referred to herein as a "Plaintiff" and collectively as the "Plaintiffs," individually and on behalf of all other persons similarly situated, by their undersigned attorneys, for their complaint against defendant, file this lawsuit to stop Securus Technologies, Inc. ("Securus" or "Defendant") from, and obtain damages and restitution from Securus for, illegally monitoring, recording, maintaining, storing, and disclosing private phone calls by detainees to or from their attorneys without either party's permission and without warning, and allege the following based upon personal knowledge as to themselves and their own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through their attorneys, which includes, without limitation, a review of Defendant's public documents, announcements, and wire and press releases published by and regarding Securus, and information readily obtainable on the internet.

## JURISDICTION AND VENUE

2.         This Court has original jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"), because: (a) at least one member of the putative Class is a citizen of a state different from Securus; (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs; (c) the proposed Class consists of more than 100 Class Members; and (d) none of the exceptions under the subsection apply to this action.

3.         This Court has supplemental jurisdiction over the California Invasion of Privacy Act, Cal. Penal Code §§ 630, *et seq*. ("CIPA") and other state statutory and common law claims pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction over pendant state law claims).

4.         This Court has personal jurisdiction over Defendant because: (a) it is registered to, and in fact does, conduct business in California; and (b) has sufficient

minimum contacts in California, or otherwise intentionally avails itself of the markets within California through the promotion, sale, marketing, and distribution of its products and services, to render the exercise of jurisdiction by this Court proper and necessary.

5.      Venue is proper in this District under 28 U.S.C. § 1391 because: (a) Plaintiffs are residents of, and domiciled in, this District, (b) Defendant conducts substantial business in this District, and (c) a substantial part of the events giving rise to Plaintiffs' claims alleged herein occurred in this District.

## PARTIES

6.      Plaintiff Juan Romero is a resident of San Diego, California and the county of San Diego, who was a detainee and prisoner held at one or more of San Diego county's detention facilities at various times from August 15, 2012 through May 6, 2016, and a user of the Securus phone system who has used Securus' phone system to communicate legal information with his attorneys.

7.      Plaintiff Frank Tiscareno is a resident of Menifee, California and the county of Riverside, who was a detainee and prisoner held at one or more of San Diego county's detention facilities from February 14, 2013 through February 25, 2013 and October 8, 2013 and September 26, 2015, and a user of the Securus phone system who has used Securus' phone system to communicate legal information with his attorney(s).

8.      Plaintiff Kenneth Elliott is a resident of San Diego, California and the county of San Diego, a licensed criminal attorney who has practiced law in San Diego since 1988, and has used the Securus' phone system to give legal advice to and communicate legal information with his clients since Securus commenced providing telephone services at San Diego county detention facilities.

9.      Defendant Securus Technologies, Inc. is a Delaware corporation with its principal place of business at 14651 Dallas Parkway, Suite 600, Dallas, Texas 75254-8815.

## SUMMARY AND COMMON FACTUAL ALLEGATIONS

10.     Plaintiffs are attorney and detainee users of the Securus phone system who bring this proposed class action lawsuit on behalf of all detainees and attorneys who used the Securus phone system from July 10, 2008 to present (the opt-out date, inclusive) to communicate, converse, and exchange information and legal advice, and whose private phone calls were unlawfully recorded without permission of all parties. Plaintiffs seek injunctive relief requiring Securus to implement and maintain policies and practices to comply with all applicable laws and regulations designed to protect privacy rights, and to prevent and remedy these types of unlawful private and confidential recordings, as well as restitution, damages, statutory remedies, disgorgement, and other further relief this Court may deem proper.

11.     Throughout the country, a person arrested is typically brought to a detention facility or jail to be booked by law enforcement authorities.   Attorneys routinely contact, communicate, converse, and exchange information and legal advice with detainee clients in jail, by phone or videoconference to discuss confidential matters.  They do so under the express understanding, representation, and promise from Securus that their conversations are private, confidential, and privileged, and are not to be recorded without permission from all parties.  Similarly, Securus represents and promises, and detainees are told and understand, their conversations with their attorneys are private, confidential, and privileged and not to be recorded without permission from all parties.

12.     Prison and jail communications is a $1.2 billion a year business.  Securus provides phone and videoconference services to detainees nationwide and, without limitation, San Diego county, San Bernardino county, Riverside county, and other California county detention facilities.   Securus is a leading provider of phone services inside the country's prisons and jails.

13.     Securus claims on its website that it is the largest inmate communications provider in the country serving thousands of correctional facilities and more than one

million inmates in at least 45 states.  The company processes over one million calls per day.  In 2014, Securus is reported to have generated over $400 million dollars in revenue from tolls and fees it charges detainees and their families, friends, lawyers, and others for speaking with detainees.

14.     Securus records communications between detainees and the outside world on servers, electronic storage devices, cables, and software separate from what connects the callers.  The equipment it uses to intercept, record, and share detainees' and lawyers' telephone calls facilitates such calls.  The recordings are not a necessary incident of the calls.

15.     Securus gives local law enforcement agencies direct eavesdropping ability and online access to recorded phone calls and the ability to listen in and review them at any time.  In fact, some, if not all, of Securus' contracts with law enforcement require Securus to provide inmate call recording and tracking and allow law enforcement, including without limitation prosecuting attorneys, to search the contents of those recordings at will and without notice.

**Promises About Recording of Private Attorney-Client Phone Calls**

16.     Securus promises Plaintiffs, Class Members, attorneys, and the public that it does not record telephone calls between attorneys and their clients. For instance, its "Video Visitation" brochure states in connection with an inmate's calls to their attorney: "These private sessions will not be recorded or monitored."

17.     Securus also pledges in its Customer Integrity Pledge on its website to its customers, inmates, friends, family, attorneys, and the corrections community, without limitation, that:

- We will be open and honest in our dealings;
- We will always be truthful in what we can do and what we can't do in responses to your questions and requests;
- We understand that confidentiality of calls is critical, and we will follow all Federal, State, and Local laws in the conduct of our business; and

- 4 -

*Romero et al v. Securus Technologies, Inc.* No. 16-cv-1283
THIRD AMENDED COMPLAINT

- We will show you respect, dignity, and integrity in all of our dealings.

18.     Securus thereby leads detainees and their attorneys, including Plaintiffs and Class Members, to believe calls between them are not recorded without permission of all parties, and are private and confidential.

19.     In reality, however, Securus does eavesdrop on, listen in on, record, and store private and confidential attorney-client phone calls without permission of all parties, and Securus shares access and recordings with law enforcement personnel, including prosecutors, as evidenced by, *inter alia*, reports by lawyers of production of such recorded calls from prosecutors in discovery.   The opportunity for the prosecution to use the knowledge acquired through eavesdropping and listening to the recorded phone calls to their tactical advantage, with or without admitting they eavesdropped or obtained or listened to the recordings, creates a huge potential for mischief and abuse and a chilling effect on the effective assistance of counsel - a constitutional right.

### Invasion of the Protected Privacy Interest

20.     Civil detainees, like other citizens, have an objectively reasonable right to expect that their phone calls, and especially private and confidential attorney-client phone calls, will not be recorded or stored without their permission.  Law enforcement is not free to record and make use of telephone conversations, and especially attorney-client telephone conversations and recordings, without limitation.

21.     Plaintiffs, Class Members, and all attorneys and their clients have a right to privacy when making or receiving attorney-client phone calls.  Securus' conduct seriously violates Plaintiffs and Class Members' statutory and common law rights of privacy and invades constitutionally, statutorily, and legally protected financial and privacy interests that caused, and threatens to cause, real-world, concrete, and palpable harm that affects Plaintiffs and Class Members in a personal and individual way.

*Romero et al v. Securus Technologies, Inc.* No. 16-cv-1283
THIRD AMENDED COMPLAINT

**Securus is Not So Secure**

22.     On or about November 11, 2015, the online journalism publication, *The Intercept*, announced it had received "an enormous cache of phone records" and other material, which revealed a major data breach by Securus of ***70 million*** stored phone call recordings, including what has now been determined to be over ***57,000 confidential attorney-client phone calls***, and counting, as well as other personal information, in not less than 37 states.  The recorded and leaked calls span a nearly two and one-half year period beginning in December 2011 and ending in the spring of 2014 in calls that range from under a minute to over an hour in length.  Securus makes money when the call is connected, regardless of how long it lasts, and receives more revenue the longer the call lasts.

23.     Securus advertises and promotes itself as having a superior phone system called the "Secure Call Platform" that is able to monitor, record, and securely store phone call recordings and make them accessible only to authorized users within the criminal justice system.  Securus, through promotional materials, touts itself as a provider of "the most technologically advanced audio and video communications platform to allow calls with a high level of security."

24.     Securus also states that it does "not sell, trade, or otherwise transfer to outside parties, including law enforcement, personally identifiable information," except under certain limited circumstances.  In fact, Securus does extensive business with local and county governments and private contractors, state departments of correction, the federal Bureau of Prisons, and the U.S. Marshal's Service, all of which operate the nation's jails and run the nation's prison systems.  Securus derives substantial revenue from "site commissions," which it kicks back in the form of payments to government law enforcement from revenue generated by inmate calls.

25.     Securus' website claims that its database contains the billing names and addresses of over half a million people who are not incarcerated, as well as information about 1,000,000 inmates from over 2,000 correctional facilities, that includes over 100

million call records.  Securus recognizes that this is valuable data and boasts it can make it available at the fingertips of law enforcement and correctional authorities. Securus states that the data, which is available and being sold to corrections and law enforcement authorities through so-called "site commissions," is "growing every day" and can be provided to law enforcement investigators on demand.

### Securus Breaches Its Duties and Obligations

26.     In addition to the duties and obligations Securus has voluntarily undertaken and committed to, Securus has statutory obligations not to record private and confidential attorney-client phone calls without permission of all the parties.  For example, Securus has a duty and obligation to follow all federal, state, and local laws in conducting its business, yet breached this duty by, amongst other things, recording private and confidential attorney-client privileged communications without permission or consent.

27.     In its 2011 bid to provide phone service to inmates in Missouri's state prisons (just as it did in its bid to provide phone service to detainees of the San Diego County Sheriff's Office and all the other local and county detention facilities throughout California), Securus undertook a duty and obligation to record and monitor each call, with the exception of attorney-client calls.  But, the database provided to *The Intercept* shows that over 57,000 recordings of Missouri inmate-attorney communications were recorded, collected, stored, disclosed, and ultimately hacked.

28.     *The Intercept* arrived at the 57,000 figure by looking up each of the nearly 1.3 million phone numbers that inmates called in a public directory of businesses to find out whether a law firm or attorney's office is associated with that number.  Those numbers, however, do not include calls to attorneys' cellphones or other attorneys' numbers not listed in a public business directory, and the number of recorded attorney-client calls is undoubtedly higher.

29.     Securus has undertaken these duties and obligations not to record private attorney-client conversations and communications, both directly to users of the

Securus system, and in its contracts with law enforcement agencies, yet it appears Securus has no intention of ceasing its unlawful, unconstitutional eavesdropping, recording, and invasion of private attorney-client communications.  Detainees and lawyers are all at substantial risk of having their conversations monitored, recorded, and used against them to prejudice their criminal cases, and that Defendant will continue to violate their rights.

30.    Securus claims on its website that it has a superior, revolutionary technology that collects intelligence from more than 2,600 law enforcement and correction agencies, "providing unbeatable lead generation."  It also promotes itself as "SAS 70 and Sarbanes-Oxley compliant."

31.    Securus promises that its platform will "allow calls with a high level of security" and that it "understands that confidentiality of calls is critical, and [it] will follow all federal, state, and local laws in the conduct of [its] business."  It also pledges to "provide and invest in security features that will make all parties and the public safe while maintaining the critical family connection to inmates."

32.    However, the sheer scale of the Securus hack of over 70 million recordings shows that the company's promises and promotional and advertising claims are false and misleading and that Securus has failed to live up to its own duties, obligations, and undertakings.

33.    In addition, the qualitative nature of the data hack reveals the falsity of Securus' promises and promotional and advertising materials.  The Securus database reveals that the recordings contained prisoners' first and last names; the phone numbers they called; the date, time, and duration of the calls; the inmates' Securus account numbers; as well as other information.  In addition to metadata, each phone call record includes a "recording URL", which provides a link to where the audio recordings of the calls can be downloaded with the click of a mouse.

34.    On November 12, 2015, Securus admitted the data breach and flaws in its security measures for the first time when it emailed *The Intercept* and stated

- 8 -

"evidence suggests that an individual or individuals with authorized access to a limited set of records may have used that access to inappropriately share those records."

35.     According to *The Intercept*, in an email thread from July 21, 2014, two Securus employees discussed the breach. "OMG……..this is not good!" reads one email contained in the document. "The company will be called to task for this if someone got in there that shouldn't have been." There is no indication the 2014 hack had been made public prior to *The Intercept* article.

36.     In response to The Intercept article Securus issued a press release saying,

> "It is very important to note that we have found absolutely no evidence of attorney-client calls that were recorded without the knowledge and consent of those parties," Securus added. "Our calling systems include multiple safeguards to prevent this from occurring. Attorneys are able to register their numbers to exempt them from the recording that is standard for other inmate calls.

Securus did in fact have undeniable evidence that of attorney-client calls that were recorded without the knowledge and consent of those parties as further set forth below.

37.     Securus lied thinking it was "in the clear" because the private phone calls Securus recorded between detainees and their attorneys while in physical custody in San Diego county were not included in *The Intercept* cache of phone calls.

### No Permission or Warning

38.     Commencing in and around 2008, the San Diego County Sheriff's Office ("Sheriff") verbally and in writing informed the San Diego criminal defense bar that attorneys who requested to opt-in to, and have their telephone numbers placed on, a "Do Not Record" database, and register those numbers to persons whose conversations with inmates may be privileged, that their calls would be "privatized" and not recorded.

39.     On or about July 10, 2008, Plaintiff Elliott provided the Sheriff with three office numbers and two wireless numbers which were placed in the "Do Not

Record" database and registered to him as private, thereby informing the Sheriff he did not give permission to have his telephone calls with detainees and prisoners recorded.

40.     On July 10, 2008, Detective David Hale of the Sheriff's office wrote Mr. Elliott and stated: "The numbers you requested were placed into the database as privatized."  To this day, Plaintiff Elliott has never been informed or warned that his telephone calls with his detained clients were, or may be, monitored or recorded.

41.     To the contrary, since at least May 8, 2010, attorneys who have inquired about the privacy or recording of their phone calls with detained clients have been told specifically that if their number is in the "Do Not Record" database, their calls will not be recorded.

42.     Attorney-client users of the Securus phone system did not and do not hear any "Monitor and Record" prompt, or any other warning or indication that that the phone call was, or is, being monitored and recorded.

43.     But in fact, Securus did (and does) record private phone calls to and from detainees to their criminal defense attorneys, including the Public Defender's Office, Alternate Public Defender's Office, and Assigned Counsel's Office, without their permission and without any warning.

**Securus Unlawfully Records Private Attorney-Client Calls**

44.     As an example, without limitation, of dozens of emails evidencing unlawful recording, on March 25, 2014 Captain Frank Clamser of the Sheriff's office wrote Marlon Miller at Securus stating:

"Marlon,
I randomly reviewed the call logs for the below telephone numbers for the past year, April 1, 2013 to today. All of these numbers are set as private numbers in the SCP and should not be being recorded. All of these numbers were recorded at some point in the past year. I know you are trying to determine why private calls are being recorded and I wanted to provide you additional examples.

- 10 -

```
6192343429    3103937536
6192310401    6192318575
6192322311    6192327200
6192342300    6192355638
6192361151    6192371700
6193384605    6193384700
6193384800    6193384839
6195793316    7606302000
7606303333    7609454000
7609455535"
```

45.     Plaintiff Elliott's telephone number is 760-630-3333 and is included in the Sheriff's email as a phone number that is private, should not be recorded, was recorded, and was among the "additional examples" of such recordings.

46.     Securus' own records, provided in a declaration by Ian Jones filed on or about July 5, 2016 (ECF No. 4-1), show that during the period from November 2, 2012 through May 5, 2016, while in the Sheriff's custody, Plaintiff Romero placed 85 separate phone calls totaling over 5.5 hours to his attorney's telephone number (619-231-0401), which is set forth in the Sheriff's March 25, 2014 email.  In fact, Plaintiff Romero had a ten-minute phone call with his attorney on March 24, 2014, the day before Captain Clamser's email which provided "additional examples" of illegally recorded calls.

47.     Securus' records also show that from April 11, 2014 through October 12, 2015 while in the Sheriff's custody, Plaintiff Romero placed 8 separate phone calls to the San Diego Public Defender's telephone number (619-338-4700), which is set forth in the Sheriff's March 25, 2014 email.

48.     Securus' records also show that on January 29, 2015 while in the Sheriff's custody, Plaintiff Tiscareno placed 3 separate phone calls to his attorney's telephone number (619-231-0401), which is set forth in the Sheriff's March 25, 2014 email.

49.     On April 14, 2014, Captain Clamser emailed Marlon Miller and Christopher Hudson at Securus stating:

> "Marlon,
>
> Fished through some of the private calls for the month of April.  Attached is a list of private calls I found that were recorded. Can you please achieve [sic] these calls so they are not able to be listened to.  Is there any update on resolving the problem that is allowing these calls to be randomly recorded?"

50.     Two weeks later on April 29, 2014, Captain Clamser again emailed Marlon Miller and Christopher Hudson at Securus, stating:

> "The attached Excel document contains a list of private call [sic] that were recorded.  The most recent call was recorded yesterday. This problem still exists within the SCP and has not been rectified."

51.     On May 21, 2014, Captain Clamser again wrote Securus' Chris Hudson, stating:

> "The attached excel document has a list of private calls that were recorded. The problem still exists. Please ensure these calls are blocked from be [sic] able to be listened to."

52.     These and other emails set forth herein and elsewhere describe with detailed particularity the fact that calls between detainees and their attorneys marked private are not only being recorded, but also listened to, without permission, consent, or warning of all parties.

## Securus "Purges" Lists of Private Recorded Calls

53.     Rather than notify Plaintiffs, Class Members, and its attorney and detainee customers, Securus "purged" from its system the list of private calls that were recorded.

54.     In an email from Christopher Hudson to Captain Clamser on Wednesday, April 2, 2014, Mr. Hudson stated:

"When I spoke with Marlon last her [sic] was having these numbers purged. Marlon is not here today. I will follow up with him tomorrow to check the status on this issue. I will keep you updated as well."

55.     On June 12, 2014, Captain Clamser wrote Chris Hudson stating:

"Attached is a list of private calls that were recorded within the system. Can you please purge the calls.  is there any time line on when the issue will be resolved."

56.     On June 17, 2014, Mr. Hudson again wrote Captain Clamser stating:

"Also, Here is the latest update regarding San Diego County and the issue with recorded attorney calls per Marlon Miller.  The recordings will be purged as a part of this week's maintenance window."

57.     And again on July 18, 2014 Captain Clamser emailed Securus:

"Please see the attached for a list of private calls that show they were recorded. Please purge."

58.     And again on August 5, 2014 Captain Clamser emailed Chris Hudson at Securus:

"Please purge the calls on the attached Excel document."

59.     And again on August 8, 2014 Chris Hudson emailed Captain Clamser:

"The last of the calls being purged was the list that you sent me on 08/05/2014 regarding the calls that took place from 07/18/2014 through 07/21/2014."

60.     And again on August 21, 2014, Securus' Technical Support Technician, Agent ID: 120741, wrote Captain Clamser stating:

"This e-mail is to inform you that your request to have calls purged for following private attorney numbers: 6193384700, 6195793316, 6194462900 has been completed.  This e-mail is to gain closure authorization for the ticket currently open.  Please respond to this e-mail with closure authorization or contact Securus Technical Support at 866-558-2323 and reference ticket number 14857901."

**Securus Knows the Private Numbers and Calls That Were Recorded**

61.     On March 25, 2014, Captain Clamser emailed Kris Alderman at Securus stating:

"I thought you said that you thought they could query all the private numbers to see if any other number were being recorded."

Later that day, Mr. Alderman wrote back,

"They can, but if they have specifics it will help . . . "

62.     Then on June 19, 2014, Debbie Cates from Securus wrote an email to Ankur Desai, Sr. Manager of Technical Support, and Kris Alderman, amongst other Securus personnel, stating:

"22 calls out of 15,000 has been challenging to capture."

63.     On June 20, 2014, Mr. Desai emailed Captain Clamser stating:

"Here is the latest.  We have top resources looking into this.  Please don't forward this email, its internal."

The internal email stated, "Jim Rice is working on a report that will allow us to be proactive moving forward to identify calls that should not be recorded."

64.     On November 13, 2015 there was an email exchange between Captain Clamser and Kris Alderman in response to *The Intercept* article as follows:

Kris Alderman: "You may or may not have received notice of the media report attached regarding private calls released to the public. Please see our formal response and additional information about what we are doing moving forward with the incident."

Captain Clamser: "Thank you for the information. Can you let me know if any of the calls that were released are from San Diego?"

Kris Alderman: "They were not, **we are in the clear** [emphasis added]. I have another release coming sometime today."

65.     The contents of the above-described emails demonstrate with particularity (who, what, when, and where) private attorney-client phone calls were listened in on and recorded without permission and that Securus' tried to conceal these facts.

66.     There is no inquiry required to be answered as to any individual phone call; Securus knows and has identified them, who they were to, and who the parties were.   There is no issue regarding the private nature of these calls; Securus has marked and identified them private.   And, the recorded calls can easily be identified by Securus; they recorded and compiled them.

67.     The particularized facts evidenced by, without limitation, the email contents set forth above are:

a.  Since 2008, San Diego county criminal defense attorneys have been told verbally and in writing that if they placed their phone numbers in a "Do Not Record" database, their phone conversations would not be recorded;

b.  From at least April 1, 2013 through August 5, 2014 Securus recorded attorney phone numbers and calls that were set as private numbers in the Securus

- 15 -

*Romero et al v. Securus Technologies, Inc.* No. 16-cv-1283
THIRD AMENDED COMPLAINT

system that should not have been recorded and that were expressly requested to be used for private conversations and the seeking and giving of professional legal advice and information between attorneys and their clients;

c. Commencing on March 25, 2014, Securus was expressly notified of the dates, identifiers, numbers, lengths of calls, privatization status, and other specific identifying information at least 22 "additional" examples out of 15,000 such recordings;

d. From March 25, 2014 until at least August 5, 2014 Securus knowingly continued to monitor and record attorney-client conversations without permission or warning on attorney phone numbers that were set as private numbers in the Securus system that should not have been recorded and that were expressly requested to be used for private conversations and the seeking and giving professional legal advice and information;

e. From March 25, 2014 through August 21, 2014 Securus "purged" one or more lists of phone numbers, lists of calls, and actual recordings of illegally recorded conversations seeking and giving professional legal advice and information that were set and known to be private; and

f. On November 13, 2015, Securus made a conscious decision to conceal, suppress, and cover-up the illegal recordings stating it was "in the clear."

68.    Securus knew these calls were being recorded unlawfully and covered it up by suppressing and concealing the true facts.  Securus had a duty and was bound to disclose its unlawful eavesdropping and recording due to its superior and exclusive knowledge of the true facts which were not known or reasonably accessible to Plaintiffs and Class Members, and its express representations that it would follow all federal, state, and local laws.

69.    Instead, Securus actively concealed, suppressed, omitted, and failed to disclose the true facts concerning the recording, storage, and security of private, confidential, and privileged attorney-client phone calls with the intent to induce

- 16 -

Plaintiffs and Class Members to continue to purchase Securus' communications services.

70.     Plaintiffs and Class Members were unaware of these suppressed and omitted material facts at the time they used the Securus system.  Plaintiffs and Class Members relied on the truthfulness and reliability of the statements made by Securus. Plaintiffs and Class Members did not know, or have any reason to know, of these facts, conditions or circumstances.  If they had known the true facts at the time of their telephone calls, Plaintiffs and Class Members would not have used or paid for Securus' services as they did for their attorney-client communications and would have taken action sooner to assert and protect their privacy rights.

71.     Plaintiffs and Class Members did not discover, and could not have discovered with any amount of reasonable diligence, the true facts regarding Securus' recording of their private attorney-client calls on or before March 3, 2016 when approximately 2,330 emails between the Sheriff's office and Securus' were published in response to a California Public Records Act request.  Plaintiffs and Class Members were ignorant of the true facts regarding Securus' recording of their private attorney-client calls, and lacked the ability to have earlier discovered the true facts, until March 3, 2016 when the emails were published.

72.     Defendant's acts, omissions, and concealments have rendered unavailable and futile any other remedies which could have been pursued or exhausted. Plaintiffs and Class Members have suffered, and will continue to suffer, irreparable harm by its very definition because their constitutional, statutory, and common law protected privacy rights and interests have been, and continue to be, violated by the actual and threatened intrusion and invasion thereof by Defendant.

73.     Not even an award of damages following Plaintiffs' delayed discovery of the illegal recordings can undo the irreparable harm suffered, and there neither was nor is any other remedy available to Plaintiffs and Class Members to pursue or exhaust that would not be futile.

**Plaintiffs Have Suffered Individualized Actual Concrete Injury in Fact**

74.     The United States Supreme Court has characterized the sixth amendment's guarantee of assistance of counsel in all criminal prosecutions as a right that is fundamental to library and justice.  Communication between an attorney and his client must be free and open and remain confidential for the right to effective assistance of counsel to have any meaning.

75.     Only through confidential communication can both the attorney and the client can make informed choices about the preparation and conduct of the client's defense. If the government can obtain damaging information from counsel, defendants will not confide in their lawyers. The predictable result would be to undermine the quality of the legal representation.  Only through free, open, and confidential communication can an attorney provide optimal legal representation.

76.     This is not a case of "no harm, no foul."  Plaintiffs and the Class Members paid for private phone calls that were eavesdropped on and recorded by Securus, and which invaded their legally, statutorily, and constitutionally protected interests of the right to privacy and the right to effective assistance of counsel. Plaintiffs and the Class members would not have paid for or made these types of phone calls, or would not have paid as much for such compromised phone calls, had they known the truth about Securus' eavesdropping and recording.

77.     This in and of itself is concrete, particularized, actual harm and injury. Unfortunately, and even more importantly, the actual and imminent harm inflicted on Plaintiffs and the Class Members does not start and end with the potentially hundreds of millions of dollars of tangible damage caused by Securus' conduct.

78.     As an example, without limitation, of both the tangible and intangible harm caused by Securus conduct, on or about June 17, 2016, Plaintiff Elliott received a collect call from a detainee who was in the Sheriff's custody in county jail.  Mr. Elliott, now being aware that his prior phone calls with detainees had been eavesdropped on, and uncertain about the privacy of his phone calls, including

- 18 -

without limitation this particular call, was faced with the Hobson's choice of either: (a) paying for using an insecure phone line with a detainee for a conversation in a guarded exchange of limited, closed, and compromised information and advice; (b) paying for having a free, open, and confidential communication recorded and used against him and a client; or (c) not accepting or paying for the call and either foregoing communication entirely, or devoting significant time, cost, expense, and effort to visit the detainee and only exchange information and give legal advice in person.  Plaintiff Elliott and the Attorney Class Members are suffering the same imminent harm in connection with every Securus phone system call to or from a detainee in the custody of law enforcement.

79.     The detainee, on the other hand, without limitation, is and was faced with the proposition of either: (a) having his constitutionally protected right to effective assistance of counsel illegally compromised; or (b) incurring fees and expenses for Mr. Elliott to make a delayed trip to jail to securely visit him in person, thereby turning a ten-minute phone call into a three-hour trip and jeopardizing his right to timely assistance of counsel.

80.     Plaintiffs and the Class Members have suffered real-world, actual, concrete harm by, without limitation: (a) paying for calls they otherwise would not have paid for had they know of Securus' conduct; and (b) having their legally protected rights to privacy and effective assistance of counsel invaded.  The Attorney Class and Current Detainee Class is presently facing the same imminent real, actual, and concrete harm and injury from Securus' concealment of its illegal conduct and its failure to redress the harm.

81.     Plaintiff Elliott and the Attorney Class Members are presently suffering a real, actual, imminent, and concrete harm and injury traceable to Securus' conduct resulting from the uncertainty and confusion of having their phone calls with attorneys recorded by:  (a) paying for using an insecure phone line for a client conversation in a guarded exchange of limited, closed, and compromised

- 19 -

information and advice, on the one hand; or (b) on the other hand:  (1) paying for having free, open, and confidential communication recorded and used against them and their clients and compromising not only the communication, but also the ultimate success or failure of the defense and therefore the attorneys' reputation and livelihood;  (2) not paying for or accepting phone calls and devoting significant time, cost, expense, and effort to make in person visitations, thereby diminishing and diverting attorney income and resources; (3) subjecting themselves and their reputations to damage from the diminished effectiveness of their professional assistance in the defense of their clients through limitations on their communications, exchange of information, advice; and (4) changing and/or compromising defense strategies in connection with the eavesdropping and recording of confidential communications with their clients.

82.    The total number of private phone calls between detainees and their lawyers recorded without permission or warning is currently unknown, but the recording of private attorney-client calls appears endemic to the Securus system on a California-wide, and indeed a nationwide, basis.  Based on the contents of emails set forth above, it appears there were at least 15,000 such calls illegally recorded between April 1, 2013 and June 19, 2014 in San Diego county alone.

83.    Securus, though, can tell us how many private calls were unlawfully recorded.  Securus not only brags in its promotional materials, in its proposals, and in its contracts that it places this information and law enforcements "fingertips," but also admits in the content of the emails set forth above that it has the capability to query all the private numbers which attorneys affirmatively "privatized" and which Securus knew they did not have permission to record to see: (a) if any such numbers were in fact being recorded; and (b) how many of such private calls were in fact recorded.

84.    Securus' ability to identify calls marked private which they did not have permission to record, but which they did in fact record is further evidenced by Mr. Jones' declaration filed on or about July 5, 2016 (ECF No. 4-1).

- 20 -

85.     In addition to San Diego county (population 3.2M), Securus also does business in Riverside county (population 2.2M), San Bernardino county (population 2M), San Mateo county (population 700K), and other California counties.  In all, Securus claims to serve 70 county detention facilities in California alone.  Based on an extrapolation of the 15,000 illegally recorded calls in San Diego county searched by Securus, as well as the Missouri statistics, the potential number of private attorney-client phone calls unlawfully recorded by Securus is staggering, with well over 500,000 calls estimated per year made just to the Public Defenders' offices in the four counties listed above.

86.     Securus has been wrongly and unjustly enriched by payments illegally collected by Securus, and the retention of such payments is unfair and unlawful given the true facts regarding the eavesdropping, listening to, recording, storage, disclosure, and security of the conversations between Plaintiffs, Class Members, and detainees and their attorneys who used the Securus system.  Securus should not be allowed to retain the proceeds from the benefits conferred upon it by Plaintiffs, Class Members, and attorney-client users of the Securus system.

## PLAINTIFFS' EXPERIENCES

### Plaintiff Romero

87.     Plaintiff Juan Romero is a resident of San Diego, California and the county of San Diego who formerly was a detainee and prisoner of, without limitation, the San Diego County George Bailey Detention Facility, at various times from August 15, 2012 through May 6, 2016.  During the Class Period, Mr. Romero used the Securus phone systems in private conversations with his attorneys.  Mr. Romero's attorneys' phone conversations with detainees were recorded.  On information and belief, Securus recorded Mr. Romero's private, confidential, and privileged phone calls with his attorneys without warning to, or permission from, all parties.

88.     Neither Plaintiff Romero nor his attorneys have received any notice of the recording of their phone calls.  Securus' unlawful recordings compromised the private, confidential, and privileged conversations of Mr. Romero and his lawyers.

### Plaintiff Tiscareno

89.     Plaintiff Frank Tiscareno is a resident of Menifee, California and the county of Riverside who formerly was a detainee and prisoner of, without limitation, the San Diego County Central Jail, from February 14, 2013 through February 25, 2013 and October 8, 2013 and September 26, 2015.  During the Class Period, Mr. Tiscareno used the Securus phone systems in private conversations with his attorney.  Mr. Tiscareno's attorney's phone conversations with detainees were recorded.  On information and belief, Securus recorded Mr. Tiscareno's private, confidential, and privileged phone calls with his attorney without warning to, or permission from, all parties.

90.     Neither Plaintiff Tiscareno nor his attorney have received a notice of the recording of their phone calls.  Securus' unlawful recordings compromised the private, confidential, and privileged conversations of Mr. Tiscareno and his lawyer.

### Plaintiff Elliott

91.     Plaintiff Kenneth Elliott is a resident of San Diego, California and the county of San Diego who is a licensed member of the California Bar and a criminal law attorney practicing in San Diego county.  During the Class Period and continuing to this day, Mr. Elliott used, and continues to use, the Securus phone system in private conversations with his clients to communicate and give professional advice, and to both give and receive information in connection with the legal representation of his clients while such clients are in the physical custody of the Sheriff.

92.     On or about July 10, 2008, Mr. Elliott informed the Sheriff he was not giving permission to have his telephone calls with detainees and prisoners recorded by requesting his three office telephone numbers and two mobile phone numbers be placed in the "Do Not Record" database and be privatized.  On July 10, 2008,

Detective David Hale of the Sheriff's office wrote Mr. Elliott and stated: "The numbers you requested were placed into the database as privatized."

93.    Mr. Elliott's private and privileged attorney phone conversations with detainees were recorded, as evidenced by the contents of the emails set forth above. Securus recorded his private, confidential, and privileged phone calls with his clients without warning to, or permission from, all parties.

94.    Plaintiff Elliott did not give permission for, and was neither warned of nor received notice of, the recording of his private and privileged phone calls with his clients.    Securus' unlawful recordings compromised, and continue to compromise, the private, confidential, and privileged conversations of Mr. Elliott and his detainee clients.

## CLASS ACTION ALLEGATIONS

95.    Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and all Members of the "Attorney Class," preliminarily defined as:

The Attorney Class

All attorneys: (a) whose conversation(s), or any portions thereof were listened to, eavesdropped on, and/or recorded by Securus from July 10, 2008 to the applicable opt-out date, inclusive: (b) without permission of all parties to such conversation; (c) by means of an electronic device; (d) with a person for whom they were serving as an attorney; and (e) while such person was in the physical custody of a law enforcement officer or other public officer, or who was on the property of a law enforcement agency or other public agency in California.

Such persons are collectively referred to herein individually as an "Attorney Class Member" and collectively as the "Attorney Class" or "Attorney Class Members."

96.    Additionally, Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and all Members of the "Former Detainee Class," preliminarily defined as:

- 23 -

1
2
3
4
5
6
7
8

The Former Detainee Class

All persons who were physically in California, and: (a) whose conversation(s), or any portions thereof with that person's attorney(s) were listened to, eavesdropped on, and/or recorded by Securus from July 10, 2008 to the applicable opt-out date, inclusive: (b) without permission of all parties to such conversation; (c) by means of an electronic device; (d) while such persons were in the physical custody of a law enforcement officer or other public officer, or who were on the property of a law enforcement agency or other public agency.

9
10
11

97.    Additionally, Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and all Members of the "Current Detainee Class," preliminarily defined as:

12

The Current Detainee Class

13
14
15
16
17
18
19
20
21
22
23

All persons in California, who currently, and on the applicable opt-out date, inclusive, are: (a) in the physical custody of a law enforcement officer or other public officer, or who is on the property of a law enforcement agency or other public agency, in a facility served by Securus as a telecommunications service provider; (b) whose conversation(s), or any portions thereof with their attorney(s) were listened to, eavesdropped on, and/or recorded by Securus from July 10, 2008 to the applicable opt-out date, inclusive; (c) without permission of all parties to such conversation; (d) by means of an electronic device; and (e) while such persons were in the physical custody of a law enforcement officer or other public officer, or who were on the property of a law enforcement agency or other public agency in California.

24
25
26

98.    The Classes described in this Complaint may be jointly referred to as the "Class" and proposed Members of the Classes may be jointly referred to as "Class Members."

27
28

99.    Excluded from the Class are the Defendant herein, law enforcement agencies and personnel, members of the foregoing persons' immediate families and

- 24 -

1  their legal representatives, heirs, successors, or assigns, and any entity or person in
2  which Defendant has or had a controlling or supervisory interest or control over at
3  all relevant times.

4      100.    Plaintiffs satisfy the numerosity, commonality, typicality, adequacy,
5  and predominance prerequisites for suing as representative parties pursuant to Rule
6  23 of the Federal Rules of Civil Procedure.

7      101.    <u>Numerosity.</u>  The exact number of proposed Class Members is
8  currently not known, but is believed to consist of hundreds if not thousands of
9  former or current Securus detainees and attorneys who have used, or are using,
10  Securus' phone system and have had their private attorney-client phone
11  conversations recorded without their permission or warning, making joinder of each
12  individual Class Member impracticable.

13      102.    <u>Commonality.</u>  Common questions of law and fact exist for the
14  proposed Class' claims and predominate over questions affecting only individual
15  Class Members. Common questions include, without limitation:

16      a.  Whether the recording of a telephone call between a detainee and his or her
17          or her attorney without permission or warning constitutes a violation of each
18          Class Member's CIPA rights, common law tort of invasion of privacy rights,
19          and other statutory and common law rights as set forth herein;

20      b.  What monitoring, limiting, and supervisory procedures and practices should
21          Securus be required to implement to ensure ongoing protection of each
22          Attorney Class Member's and Current Detainee Class Member's CIPA or
23          other legal rights and as part of any injunctive relief ordered by the Court;

24      c.  Whether Securus violated the Class Members' rights under California Penal
25          Code Section 636 by recording of a telephone call between a detainee and his
26          or her attorney without permission or warning;

27      d.  Whether Securus acted negligently, fraudulently, and unlawfully by, without
28          limitation:  (i)  failing to adequately protect Class Members' privacy rights;

- 25 -

(ii) eavesdropping on, listening in to, recording, disclosing, and/or storing private, confidential, and privileged telephone calls between detainees and their attorneys without permission of all parties; (iii) failing to follow all applicable laws; (iv) failing to notify, warn, or get permission of Plaintiffs and Class Members, at the point of call or otherwise, to record the call; (v) failing to notify Plaintiffs and Class Members after the recording of private telephone calls and conversations between a detainee and his or her attorney without permission or warning that the call had been recorded; and (vi) failing to maintain adequate monitoring, limiting, and supervisory procedures, policies, and practices;

e. Whether Plaintiffs and Class Members may obtain damages, restitution, disgorgement, declaratory, and injunctive relief against Securus; and

f.  What monitoring, limiting, supervisory, policies procedures and practices, security procedures, and recording warning and notification procedures Securus should be required to implement as part of any injunctive relief ordered by the Court.

103.    Typicality.  Plaintiffs' claims are typical of the claims of the proposed Class because, among other things, Plaintiffs and Class Members sustained similar injuries and statutory damages as a result of Securus' uniform wrongful conduct and their legal claims all arise from the same core Securus practices.

104.    Adequacy.  Plaintiffs will fairly and adequately protect the interests of the Class.  Their interests do not conflict with Class Members' interests and they have retained counsel competent and experienced in complex, privacy, and class action litigation to vigorously prosecute this action on behalf of the Class.   In addition to satisfying the prerequisites of Rule 23(a), Plaintiffs satisfy the requirements for maintaining a class action under Rule 23(b)(3).

105.    Common questions of law and fact predominate over any questions affecting only individual Class Members and a Class action is superior to individual

litigation.  The amount of damages available to individual Plaintiffs are insufficient to make litigation addressing Securus' conduct economically feasible in the absence of the Class action procedure.   Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case.  By contrast, the Class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

106.    In addition, Class certification is appropriate under Rule 23(b)(1) or (b)(2) because:

a. the prosecution of separate actions by the individual Members of the proposed Class would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Securus;

b. the prosecution of separate actions by individual Class Members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

c. Securus has acted or refused to act on grounds that apply generally to the proposed Class, thereby making final injunctive relief or declaratory relief described herein appropriate with respect to the proposed Class as a whole.

## FIRST CAUSE OF ACTION

### Violation of the California Invasion of Privacy Act

### Cal. Penal Code §§ 630, *et seq*.

### (On Behalf of the Plaintiffs Individually and the Class)

107.    Plaintiffs and Class Members incorporate by reference the foregoing allegations.

- 27 -

108.    The California Invasion of Privacy Act, Cal. Penal Code §§ 630, *et seq*. ("CIPA"), states that: "The Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society."

109.    Plaintiffs and Class Members made and received private, confidential, and privileged attorney-client telephone calls which were recorded by Securus without permission or consent of all parties and without disclosure to both parties that the phone calls may be, or were being, recorded.

110.    California Penal Code Section 636(a) prohibits "[e]very person" from 'without permission from all parties to the conversation, eavesdrop[ping] on or record[ing], by means of an electronic device, a conversation, or any portion thereof, between a person who is in the physical custody of a law enforcement officer or other public officer, or who is on the property of a law enforcement agency or other public agency, and that person's attorney, religious adviser, or licensed physician...'"

111.    Pursuant to California Penal Code Section 632(b), Securus is a "person."

112.    Securus violates the CIPA when it listens to, eavesdrops, or records, stores, and discloses, without permission private, privileged, and confidential phone calls made and received by Plaintiffs and Class Members without permission of all parties.

113.    Securus does not have express or implied permission of all parties to eavesdrop upon or record private, confidential, and privileged telephone calls to or from attorneys with their clients without warning.  To the contrary, Securus expressly undertook a duty and obligation to Plaintiffs and Class Members when it told them their calls would not be recorded.  In fact, Securus was expressly told it

- 28 -

did not have permission to record Plaintiffs and the Class' calls because the phone numbers recorded were in Securus "Do Not Record" database and "privatized" list.

114.    Plaintiffs and Class Members did not, and do not, consent to or give permission for, expressly or impliedly, Securus' eavesdropping upon and recording of their private, confidential, and privileged phone calls between attorneys and their clients.  Securus does not disclose to or warn Plaintiffs and Class Members that their private, confidential, and privileged calls may be recorded, stored, and disclosed to third parties.  Plaintiffs and Class Members do not know or expect, or have any reason to know or suspect, that Securus records their private, confidential, and privileged phone calls between attorneys and their clients.

115.    Neither Plaintiffs nor the Class Members did discover, or could have discovered with any amount of reasonable diligence, the true facts regarding Securus' recording of their private attorney-client calls until March 3, 2016 when approximately 2,330 emails between the Sheriff's office and Securus' were published in response to a California Public Records Act request.  Plaintiffs and the Class Members were ignorant of the true facts regarding Securus' recording of their private attorney-client calls, and lacked the ability to have earlier discovered the true facts, until March 3, 2016 when the emails were published.  Discovery of the true facts did not actually occur, and could not have occurred, until after any applicable statutes of limitation, including the one-year statute of limitations for violations of the CIPA.

116.    California Penal Code Section 637.2 provides: "Any person who has been injured by a violation of this chapter may bring an action against the person who committed the violation for the greater of the following amounts:

(a)    Five thousand dollars ($5,000).

(b)    Three times the amount of actual damages, if any, sustained by the Plaintiffs.

(c)    Any person may, in accordance with Chapter 3 (commencing with Section 525) of Title 7 of Part 2 of the Code of Civil Procedure, bring an action to

- 29 -

enjoin and restrain any violation of this chapter, and may in the same action seek damages as provided by subdivision (a).

(d)   It is not a necessary prerequisite to an action pursuant to this section that the Plaintiff has suffered, or be threatened with, actual damages."

117.   Accordingly, Plaintiffs and the Class request that the Court issue declaratory relief declaring Securus' practice of eavesdropping on, listening to, recording, disclosing, or using private, confidential, and privileged between detainees and their attorney without permission of all parties unlawful.

118.   Plaintiffs and the Attorney Class and Current Detainee Class request the Court enter an injunction requiring Securus to cease the unlawful practices described herein and enjoining Securus from eavesdropping on, listening to, recording, disclosing, or using private, confidential, and privileged communications between detainees and their attorneys without permission of all parties.

119.   Plaintiffs and the Class Members request the Court order Securus to identify, seek, obtain, encrypt, and ultimately destroy at the conclusion of this action all existing recordings in their possession or the possession of third parties to whom they have given access or disclosed unlawfully recorded communications.

120.   Plaintiffs and the Attorney Class and Current Detainee Class request that the Court enter an injunction ordering that Securus:   (a) engage a third party ombudsman as well as internal compliance personnel to monitor, conduct test, and audit Securus' safeguards and procedures on a periodic basis; (b) audit, test, and train its internal personnel regarding any new or modified safeguards and procedures; (c) conduct regular checks and tests on its safeguards and procedures; (d) periodically conduct internal training and education to inform internal personnel how to identify violations when they occur and what to do in response; and (e) meaningfully educate its former and current users about their privacy rights by, without limitation, pre-recorded statements at the beginning of recorded phones calls, as well as any steps they must take to safeguard such rights.

121.    Plaintiffs and the Class Members request the Court enter an order pursuant to California Penal Code Section 637.2 awarding statutory damages of $5,000 to Plaintiffs and each Class Member for each phone call unlawfully recorded without permission of all parties.  Additionally, Plaintiffs and the Class seek pre-and-post-judgment interest and attorneys' fees and costs as allowed by statute. *See e.g.*, Cal. Civ. Proc. Code § 1021.5.

<u>**SECOND CAUSE OF ACTION**</u>

**Violation of California's Unfair Competition Law**

**Cal. Bus. & Prof. Code §§ 17200, *et seq*.**

**(On Behalf of Plaintiffs Individually and the Class)**

122.    Plaintiffs and Class Members incorporate the above allegations by reference.

123.    California's Unfair Competition Law ("UCL") prohibits unfair competition, defined as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [California's False Advertising Law]." Cal. Bus. & Prof. Code § 17200.

124.    Defendant willfully violated, and continues to violate, the "unlawful" prong of the UCL by violating the California Invasion of Privacy Act, Cal. Penal Code § 636, and other applicable statutes and laws alleged herein.

125.    Defendant willfully violated, and continues to violate, the "fraudulent" prong of the UCL through misrepresentations, omissions, and non-disclosures which are false, misleading, and have a tendency to deceive, and did deceive, Plaintiffs, Class Members, and the general public, as detailed herein.

126.    Defendant willfully violated, and continues to violate, the "unfair" prong of the UCL by gaining unjust profits from the surreptitious eavesdropping on and recording and dissemination of Plaintiffs' and Class Members' private attorney-client phone calls without their permission or knowledge and in violation of their statutorily protected privacy rights.

127.     The acts, omissions, misrepresentations, and non-disclosures of Defendant, as described herein, further constitutes "unfair" business acts and practices under the UCL in that Defendant's conduct offends public policy against invasion of privacy and seeks to profit and capitalize on the need for attorneys and their clients' for timely, private, and confidential exchange of information and full, frank, and informed advice.

128.     Plaintiffs and Class Members would not have paid for and used the Securus telephone system for private and privileged phone conversations as they did, or would not have paid as much for them, had they known the true facts about the eavesdropping and recording.

129.     Neither Plaintiffs nor the Class Members did discover, or could have discovered with any amount of reasonable diligence, the true facts regarding Securus' recording of their private attorney-client calls until March 3, 2016 when approximately 2,330 emails between the Sheriff's office and Securus' were published in response to a California Public Records Act request.  Plaintiffs and the Class Members were ignorant of the true facts regarding Securus' recording of their private attorney-client calls, and lacked the ability to have earlier discovered the true facts, until March 3, 2016 when the emails were published.  Discovery of the true facts did not actually occur, and could not have occurred, until after any applicable statutes of limitation, including the four-year statute of limitations for unfair competition law and illegal business practices.

130.     As a direct and proximate result of Defendant's unlawful, unfair, and fraudulent business practices, Plaintiffs and putative Class Members have suffered injury, including but not limited to, monetary loss in connection with purchases of services they would not have purchased absent Defendant's unlawful conduct and false and/or misleading representations and omissions, as well as invasion of their statutorily protected privacy rights.

131.     Accordingly, Plaintiffs and the Attorney Class Members and Current Detainee Class Members are entitled to, and hereby seek, an order of this Court enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign pursuant to Section 17203 of the UCL.

132.     Plaintiffs and Class Members are further entitled to, and hereby seek an order for disgorgement and restitution of all monies acquired from the sales of the Securus' services which were unjustly acquired through acts of unlawful, unfair, and/or fraudulent competition by Defendant, as well as any other further equitable relief this Court may deem necessary, just, and proper under the circumstances. Additionally, Plaintiffs and the Class seek pre-and-post judgment interest and attorneys' fees and costs as allowed by statute. *See e.g.*, Cal. Civ. Proc. Code § 1021.5.

## THIRD CAUSE OF ACTION

### Fraudulent Concealment/Intentional Omission of Material Facts

### Cal. Civ. Code §§ 1709, 1710(3)

### (On behalf of Plaintiffs Individually and the Class)

133.     Plaintiffs and Class Members incorporate by reference the foregoing allegations.

134.     California Civil Code Section 1709 provides that "[o]ne who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers."  "Deceit," within the meaning of Section 1709, includes "[t]he suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact." Cal. Civ. Code § 1710(3).

135.     Securus intentionally and knowingly concealed material facts from Plaintiffs and Class Members that were known only to Securus prior to Plaintiffs and

Class Members' purchases and use of the Securus telephone system to make private attorney-client calls.

136.    Securus intentionally and knowingly concealed the aforementioned material facts from Plaintiffs and Class Members with the intent to induce them to purchase services from and use, and continue to purchase services from and use, the Securus phone system to make private attorney-client calls.

137.    Neither Plaintiffs nor the Class Members did discover, or could have discovered with any amount of reasonable diligence, the true facts regarding Securus' recording of their private attorney-client calls until March 3, 2016 when approximately 2,330 emails between the Sheriff's office and Securus' were published in response to a California Public Records Act request.  Plaintiffs and the Class Members were ignorant of the true facts regarding Securus' recording of their private attorney-client calls, and lacked the ability to have earlier discovered the true facts, until March 3, 2016 when the emails were published.  Discovery of the true facts did not actually occur, and could not have occurred, until after any applicable statutes of limitation, including the three-year statute of limitations for concealment.

138.    Securus had, and has, a duty to disclose the concealed information because Plaintiffs and Class Members did not know of the concealed facts prior to purchasing and using the Securus telephone system to make private attorney-client calls, nor could they reasonably be expected to learn or discover such concealed facts prior thereto.  Further, Securus does not disclose that it gives access to third parties to eavesdrop on, and listen to the recordings of, private attorney-client phone calls. In fact, it affirmatively represents to the contrary.

139.    Plaintiffs and Class Members would not have purchased or used the Securus phone system to make private attorney-client calls, or would not have paid as much for telephone calls, had they known of the concealed information.

140.    As a direct and proximate result of Securus' fraudulent concealment of material facts, Plaintiffs and Class Members have suffered injury, including but not

limited to, monetary loss in connection with purchases of products and services they would not have purchased absent Securus' fraudulent omissions and non-disclosures, as well as invasion of their statutorily protected privacy rights.

141.    Accordingly, Plaintiffs and Class Members are entitled to, and hereby seek, actual damages, punitive damages, reasonable attorneys' fees and costs under Cal. Civ. Proc. Code § 1021.5, pre-and post-judgment interest at the applicable legal rate, and any and all further equitable relief that this Court deems appropriate.

## FOURTH CAUSE OF ACTION

### Fraud and Intentional Misrepresentation

### Cal. Civ. Code §§ 1709, 1710(1)

### (On behalf of Plaintiffs Individually and the Class)

142.    Plaintiffs and Class Members incorporate the above allegations by reference.

143.    California Civil Code Section 1709 provides that "[o]ne who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers."

144.    "Deceit," within the meaning of Section 1709, includes "[t]he suggestion, as a fact, of that which is not true, by one who does not believe it to be true." Cal. Civ. Code § 1710(1).

145.    Securus intentionally and knowingly misrepresented and/or suggested untrue or misleading facts to Plaintiffs and Class Members concerning its telephone services, including but not limited to, the representation to the Sheriff and the public that "if the call is private, . . . there won't be a recording" and Securus complies with all governing Federal, State, and Local laws.

146.    On or about May 29, 2012 Richard A. ("Rick") Smith, President and Chief Executive Office of Securus issued and published its Customer Integrity Pledge to its "Customers — Inmates, Friends, Family, and the Corrections Community" (the "Pledge") with the intent that they reach an intended audience and

population of which Plaintiffs and the Class were members of (the "Target Audience").  Securus promised the Plaintiffs, the Class, the Corrections Community, and the public it:

    (a)        would be *open and honest* in all its dealings;

    (b)        would always be *truthful in what it can do and what it can't do* in responses to Plaintiffs, the Class', and the public's questions and requests;

    (c)        would provide the most technologically advanced audio and video communications platform to *allow calls with a high level of security*; and

    (d)        understood that confidentiality of calls is critical, and *would follow all Federal, State, and Local laws* in the conduct of its business.

147.    These statements were and are false and misleading.  In fact, Securus is not open and honest, is not truthful about what it can and cannot do, does not have a high level of security in phone calls made by Plaintiffs and the Class, and does not follow all Federal, State, and Local laws.

148.    Securus has made affirmative false representations and promises that it would not record private attorney-client conversations and communications in its contracts with law enforcement agencies, including without limitation with the San Diego County Sheriff.

149.    In Section 8.1 of the Agreement With Securus Technologies, Inc. For Detention Facilities for the Sheriffs' inmate telephone services dated and executed on August 8, 2012, and subsequent amendments (known as contract number 542145 and referred to herein as the "Securus Agreement"), Kristopher Alderman, Dennis Reinhold, and Robert Pickens of Securus represented to one or more persons at the Sheriff's office, including without limitation Frank Clamser and Keith Spears (the manager of the Sheriff's Contract Division) that Securus, "shall at all times perform its obligations hereunder in compliance with all applicable federal, State, and County

laws and regulations." This representation by Securus to the Sheriff's staff members was and is false and misleading.

150.     In Addendum 4 to RFP #5337 included in the Securus Agreement, Securus confirmed to one or more persons at the Sheriff's office, including without limitation Captain Clamser and Keith Spears, that calls made from the free telephones in the detention facility booking areas, including calls *made to attorneys or other numbers on the "do not record" list* were not being recorded. The booking phones became a part of the Securus phone system for the Sheriff's inmate telephone services.  This representation from Securus to the Sheriff's staff members that attorney-client phone calls made from the booking phones would not be recorded was and is false and misleading.

151.     On August 29, 2012 Securus Project Manager Becky Hill wrote an email to Captain Clamser of the Sheriff's office and affirmatively represented to him that,

> " . . . *if the call is private*, even if we set to record from off-hook, *there won't be a recording for a private call*….. duh…. L  So, a call record for the call but no actual call recording.  So, that leaves me at, what can we get you or how can we help you ease the mind of the attorney's that are concerned?"  [Emphasis added].

This representation by Securus to the Sheriff's staff members was and is false and misleading.

152.     During the Class Period and up until on or about March 6, 2014, when Plaintiff Elliott and the Attorney Class Members called the San Diego jails, a message played affirmatively stating that the attorney phone calls were not being recorded. Various staff members of the Sheriff's Investigations Unit, and Sanford Toyen, the Sheriff's lawyer, affirmatively stated and represented to Plaintiff Elliott and the Attorney Class Members that if an attorney's telephone number was on the private or Do Not Record list in Securus' system, attorney/client calls would not be

- 37 -

recorded and a message would play to that effect.  These representations made by Securus to the Sheriff's staff, and repeated by the Sheriff's staff to Plaintiff Elliott and the Attorney Class Members, were and are false and misleading.

153.    Commencing on about March 6, 2014, Plaintiff Elliott and the Attorney Class Members noticed attorney phone calls to the San Diego jails no longer played a message stating the call is not being recorded. From the period commencing on or about March 6, 2014 to the present, various staff members of the Sheriff's Detentions Investigations Unit, and Sanford Toyen, the Sheriff's lawyer, affirmatively reiterated, stated, and represented to Plaintiff Elliott and the Attorney Class Members that the calls are still not being recorded; they just do not play the message anymore. And if a call *is* being recorded, a message to that effect will play every 45 seconds or so.  These representations were made by Securus to the Sheriff's staff, and were repeated by the Sheriff's staff to Plaintiff Elliott and the Attorney Class Members, and were and are false and misleading.

154.    Securus has undertaken the duties and obligations not to record private attorney-client conversations and communications, both directly to users of the Securus system, and in writing in its contracts, responses to requests for proposals, and in emails as set forth above with law enforcement agencies, including without limitation with the San Diego County Sheriff.  By contractually, in its promotion and advertising campaign, and in other written communications promising and representing that it won't record attorney-client phone calls as set forth above, Securus made such fraudulent misrepresentations to the Plaintiffs and the Class with intent and reason to expect that its terms would be repeated and communicated to the Plaintiffs and the Class by the Sheriff and his staff and lawyer(s), other law enforcement, and the correctional community in order to induce them to use and pay for using the Securus telephone communications system as they did.

155.    On November 12, 2015, Securus issued a press release in response to *The Intercept* article stating, "It is very important to note that we have found

- 38 -

absolutely no evidence of attorney-client calls that were recorded without the knowledge and consent of those parties. Our calling systems include multiple safeguards to prevent this from occurring. Attorneys are able to register their numbers to exempt them from the recording that is standard for other inmate calls." These statements were and are false and misleading.

156.    On November 13, 2015, Securus issued a press release stating:

(a)     "Despite allegations from The Intercept and other parties, we have seen no evidence to date of any attorney-client privileged communications that were recorded in error;

(b)     Data about the time and phone numbers of a call are generated for virtually every call that is placed in the U.S.;

(c)     Our calling systems include multiple safeguards to prevent attorney-client recordings from occurring. Licensed attorneys are able to register their numbers or a specific call to exempt them from recording;

(d)     . . . we have seen no evidence to date of recorded calls that would fall under that category. Without direct access to the stolen information, Securus cannot confirm whether any such recorded calls exist; and

(e)     Securus does not sell call recordings or information to our law enforcement or correctional customers or anyone else. We record calls and provide forensic software to our customers based on the stipulations of our service contracts and in accordance with federal, state and local laws. Retention of these records is also conducted according to laws in various jurisdictions."

These statements were and are false and misleading.

157.    Specifically, and without limitation, Securus' sells access to call recordings and information to law enforcement and correction customers and others through its "THREADS" system.[1] Specifically, in connection with its THREADS

---

[1]    http://www.securustechnologies.com/solutions/investigative-solutions/investigation/securus-threads and the "Download Agreement" link thereon (last visited November 6, 2016)

- 39 -

system, Securus states to the law enforcement and corrections community on its website that,

> "Traditionally, communications data available for analysis by corrections and law enforcement has been limited to a specific facility or single investigator. This data typically resided on someone's computer or in software that only a few agents could use. This limitation caused delays or even hindered an investigation. Now, nationwide, more than 400 law enforcement officers are using THREADS investigative software to uncover focused leads based on their targets/suspects. The THREADS database includes the following and continues to grow every day: More than 600,000 people with billing name and address (not incarcerated); More than 950,000 inmates; More than 1,900 correctional facilities; and More than 100,000,000 call records between inmates and called parties."[2]

158.    Securus further states, without limitation, in connection with its THREADS system that,

> "The THREADS platform brings to market a nationwide, investigative community that bridges the gap between law enforcement agencies and correctional facilities. THREADS allows investigators to reach from coast to coast to uncover focused leads in a matter of seconds. The data available for analysis includes that of any corrections facility enrolled in our nationwide community and residing on SCP" and "The THREADS platform takes full advantage of this vast amount of data to provide a centralized, nationwide system producing actionable intelligence and focused leads immediately upon install to investigators from coast to coast.[3]

159.    Securus also represents to the law enforcement and corrections community on its website that the THREADS system can "Customize information and reporting to *filter out irrelevant calls, such as girlfriends or legal counsel.*"[3]

---

[2] Id.

[3] Id.

160.    Securus financial performance depends on the number and length of phone calls made on its system. Securus makes money when the call is connected, regardless of how long it lasts, and receives more revenue the longer the call lasts.

161.    Securus' claims about the high level of security, its technological sophistication, the capabilities of its system, that it does not sell recorded call information, and representations to the Plaintiffs and the Class that attorney-client phone calls will not be recorded (the "Technology Promotional Claims") has been the heart and soul of its advertising and promotional campaign and brand used to drive the use and growth of its telecommunications system. Since January 1, 2008 and through the Class Period, the Technology Promotional Claims have been touted to not only Plaintiffs, the Class, and the Target Audience, but also its venture capital and debt financiers to drive its enterprise value.

162.    Securus has effectively so branded itself by its Technology Promotional Claims as to be married to them. Securus is so married to its Technology Promotional Claims, they are so core, so central, so important, and so material to Securus' brand, that it could not falsely make them without being aware that they are false.

163.    Securus made the foregoing affirmative misrepresentations to the Target Audience with reason to expect that it be repeated and acted upon by Plaintiffs and the Class. When Defendant contracted with the San Diego County Sheriff, it represented calls between detainees and attorneys placed on the "Do Not Record" list would not be recorded and that its calling system would prevent attorney-client recordings from occurring, and it fully expected and knew that the misrepresentation would be repeated to the Plaintiffs and the Class.

164.    Securus made the foregoing affirmative misrepresentations to Plaintiffs, the Class, and the Target Audience class of persons with an intent to deceive everyone in that class.

165.    Securus' representations are false and misleading because, without limitation, Securus was not open and honest in its dealings with Plaintiffs and the

Class; was not truthful about what it could and could not do in connection with its system and recording and the "Do Not Record" representation; did not allow calls by Plaintiffs and the Class with a high level of security; and does not follow all federal, state, and local laws because it does in fact record attorney-client phone calls and track, monitor, record, and disclose Plaintiffs' and Class Members' phone calls to third parties for financial gain without their informed consent or knowledge, and in violation of their statutorily protected privacy rights.

166.    Securus statements and representations were, and are, false and misleading because Securus expressly knew at the time it issued its November, 2015 press release that it had extensive evidence of its recording of attorney-client phone calls.

167.    Securus knew that its representations and suggestions were false and/or misleading when made, or made the representations and suggestions recklessly and without regard for their truth.

168.    Securus intentionally and knowingly misrepresented and/or suggested the aforementioned untrue or misleading facts to Plaintiffs, Class Members, and the Target Audience with the intent to induce them to purchase and use the Securus telephone system. Securus' knowing and intentional misrepresentation in its Technology Promotional Claims were part of a core, central, widespread, pervasive, nationwide, and decade(s) long advertising campaign.

169.    Securus made the foregoing fraudulent misrepresentations to the Plaintiffs, the Class, and the Target Audience with intent and reason to expect that its terms would be repeated and communicated to the Plaintiffs, the Class, and the Target Audience in order to induce them to use and pay for using the Securus telephone communications system as they did.

170.    Plaintiffs and the Class acted in justifiable reliance upon the foregoing fraudulent misrepresentations in using and paying for using the Securus telephone communications system as they did.

171.     Plaintiffs and Class Members would not have purchased the Securus products and services, or would not have paid as much for them, had they known the truth about Securus' violation of their statutorily protected privacy rights.

172.     Neither Plaintiffs nor the Class Members did, or could have discovered with any amount of reasonable diligence, the true facts regarding Securus' recording of their private attorney-client calls until March 3, 2016 when approximately 2,330 emails between the Sheriff's office and Securus' were published in response to a California Public Records Act request. Plaintiffs and the Class Members were ignorant of the true facts regarding Securus' recording of their private attorney-client calls, and lacked the ability to have earlier discovered the true facts, until March 3, 2016 when the emails were published. Discovery of the true facts did not actually occur, and could not have occurred, until after any applicable statutes of limitation, including the three-year statute of limitations for fraud.

173.     As a direct and proximate result of Defendant Securus' intentional misrepresentations, Plaintiffs and Class Members have suffered injury, including but not limited to, monetary loss in connection with purchases of products and services they would not have purchased absent Securus' false and/or misleading representations, as well as invasion of their statutorily protected privacy rights.

174.     Accordingly, Plaintiffs and Class Members are entitled to, and hereby seek, actual damages, punitive damages, reasonable attorneys' fees and costs under Cal. Civ. Proc. Code § 1021.5, pre-and post-judgment interest at the applicable legal rate, and any and all further equitable relief that this Court deems appropriate.

## FIFTH CAUSE OF ACTION

### Negligence

### (On Behalf of Plaintiffs Individually and the Class)

175.     Plaintiffs and the Class Members incorporate the above allegations by reference.

- 43 -

176.     In providing telecommunications products and services to Plaintiffs and the Class, Securus owed a duty to exercise reasonable care in safeguarding and protecting private, confidential, and privileged attorney-client phone calls. This duty included, among other things, taking reasonable measures to implement and maintain reasonable procedures to protect the rights of Class Members in compliance with applicable law, including, but not limited to procedures and policies to:  (a) supervise, restrict, limit, and determine:  (i) whether any conversation between a detainee and his or her attorney is, or was, being recorded; (ii) whether all parties had given their permission to have their conversation recorded; and (iii) whether the conversation is being, or had in fact been, recorded; and (b) how long after discovery of any recordings, whether they were lawfully obtained or not, the list of calls and the recordings themselves should be retained before being "purged" or destroyed and notice given to the injured persons; (c) when and how to secure and encrypt any recordings of illegal calls pending notice and destruction; (d) when and how to notify Plaintiffs and the Class Members of the unlawful recordings; and (e) under what circumstances the recordings, whether lawfully obtained or not, may be sold, transferred, reviewed, disclosed, or released to third parties.

177.     In providing services to the Plaintiffs and the Class, Securus owed them a duty to exercise reasonable care, without limitation in: (a) obtaining permission to record their conversations; (b) adequately securing the privacy of attorney-client telephone calls and the privilege applicable to such calls; and (c) protecting the content of Plaintiffs and the Class' attorney-client phone calls from unauthorized eavesdropping, listening in, recording, storage, disclosure, and access and use.

178.     Securus' systems, policies, and procedures for handling the private, confidential, and privileged information of attorney-client phone calls were intended to, and did, affect Plaintiffs and the Class.  Securus was aware that by providing phone products and services to the attorney-client users of its systems, it had a responsibility to take reasonable measures to protect the phone calls from being

eavesdropped on or recorded and not to provide access to law enforcement, prosecutors, or other third parties without restriction.

179.    The duty Securus owed to Plaintiffs and Class Members to protect their private, confidential, and privileged attorney-client phone calls is also underscored by the California Invasion of Privacy Act, which recognizes the importance of maintaining the confidentiality of attorney-client phone calls and was established to protect individuals from improper recording of such calls.

180.    Additionally, Securus had a duty to timely disclose to and/or warn Plaintiffs and Class Members that their private, confidential, and privileged calls were, had been, or were reasonably believed to have been recorded.   Timely disclosure was necessary and appropriate so that Plaintiffs and Class Members could have, among other things, timely pursue and exhaust available remedies, and undertake appropriate measures to avoid such recordings and prevent or mitigate the risk of unlawful recording and disclosure.

181.    There is a very close connection between Securus' failure to take reasonable measures to protect attorney-client users of its systems and the injury to Plaintiffs and the Class.   When individuals have their private, confidential, and privileged attorney-client phone calls recorded they:  (a) are at risk for improper use of such recordings by law enforcement, prosecutors, and other parties, and of having their privacy rights violated; and (b) need to incur additional costs and expense to protect themselves from such invasions of privacy.

182.    Securus is legally responsible for such unlawful eavesdropping and recordings and the violations of the privacy rights of the attorney-client users of its service because it failed to take reasonable privacy and recording measures.   If Securus had taken reasonable privacy and recording security measures, private, confidential, and privileged phone calls of attorney-client users of Securus' products and services would not have been eavesdropped on or recorded.

*Romero et al v. Securus Technologies, Inc.* No. 16-cv-1283
THIRD AMENDED COMPLAINT

183.    The policy of preventing future harm weighs in favor of finding a special relationship between Securus and the Class.  Securus' attorney-client users of its telecommunications products and services count on Securus to keep their attorney-client phone calls private.  Indeed, they are captive users.  If Defendant is not held accountable for failing to take reasonable privacy security and recording measures to protect the attorney-client users of their system, they will not take the steps that are necessary to protect against future invasions of privacy and rights.

184.    It was foreseeable that if Securus did not take reasonable security measures, the private, confidential, and privileged attorney-client phone calls of Plaintiffs and Members of the Class would be recorded and unlawfully disclosed. Securus should have known to take precautions to secure such attorney-client calls.

185.    Securus breached its duty to exercise reasonable care in protecting the private attorney-client phone calls of Plaintiffs and the Class by, without limitation: (a) failing to implement and maintain adequate recording and security measures to safeguard phone calls; (b) failing to monitor its systems to identify unlawful activity; (c) allowing unauthorized recording and access to the private attorney-client phone calls of Plaintiffs and the Class; (d) "purging" such calls and recordings from its call lists without notice to Plaintiffs and the Class; and (e) failing to otherwise prevent unauthorized eavesdropping, recording, listening to, or disclosure of such calls.

186.    Securus breached its duty to timely warn or notify Plaintiffs and the Class about the unlawful recordings.  Securus has failed to issue any warnings to its current and former attorney-client users of its systems affected by the recordings. Additionally, Securus was, or should have been, aware of the unlawful recordings as early as July 10, 2012.

187.    Neither Plaintiffs nor the Class Members did discover, or could have discovered with any amount of reasonable diligence, the true facts regarding Securus' recording of their private attorney-client calls until March 3, 2016 when approximately 2,330 emails between the Sheriff's office and Securus' were published in response to

- 46 -

a California Public Records Act request.  Plaintiffs and the Class Members were ignorant of the true facts regarding Securus' recording of their private attorney-client calls, and lacked the ability to have earlier discovered the true facts, until March 3, 2016 when the emails were published.  Discovery of the true facts did not actually occur, and could not have occurred, until after any applicable statutes of limitation, including the two-year statute of limitations for negligence.

188.    But for Securus' failure to implement and maintain adequate measures to protect the privacy and confidentiality of the Plaintiffs and Class Members' attorney-client calls and conversations, and its failure to monitor its systems to identify unlawful recordings and suspicious activity, the private recording of Plaintiffs and Class Members would not have been made, and the Attorney Class and Current Detainee Class would not be at a heightened risk of unlawful recordings in the future.

189.    Securus' negligence was a substantial factor in causing harm to Plaintiffs and Class Members and in violating their CIPA and common law privacy rights.

190.    As a direct and proximate cause and result of Securus' failure to exercise reasonable care and use reasonable measures to safeguard the private, confidential, and privileged nature of the recorded attorney-client phone calls, such calls of Plaintiffs and the Class attorney-client users of the Securus telecommunications services were eavesdropped on, listened to, recorded, stored, and disclosed, such that unauthorized individuals could use the information to compromise Plaintiffs privacy rights.  Plaintiffs and the Class face a heightened risk of such invasions of privacy in the future.

191.    Members of the Class have also suffered economic damages, including incurring additional legal costs and expenses and charges for phone calls they would not have otherwise incurred and paid.

*Romero et al v. Securus Technologies, Inc.* No. 16-cv-1283
THIRD AMENDED COMPLAINT

192.     Neither Plaintiffs nor other Class Members contributed to the unlawful conduct set forth herein, nor did they contribute to Securus' unlawful eavesdropping, listening to, recording, or storage of attorney-client phone calls, nor to the insufficient measures to safeguard the private nature of such calls and conversations.

193.     Plaintiffs and the Class seek compensatory damages and punitive damages with pre-and-post judgment interest, the costs of suit, attorneys' fees, and other and further relief as this Court deems just and proper.

## SIXTH CAUSE OF ACTION

### Unjust Enrichment

### (On Behalf of Plaintiffs Individually and the Class)

194.     Plaintiffs and the Class Members incorporate the above allegations by reference.

195.     "Under California law, the elements of unjust enrichment are: (1) receipt of a benefit; and (2) unjust retention of the benefit at the expense of another." *Valencia v. Volkswagen Grp. of Am. Inc*, No. 15-CV-00887-HSG, 2015 WL 4747533, at *8 (N.D. Cal. Aug. 11, 2015). *See also*, *Munoz v. MacMillan*, 195 Cal. App. 4th 648, 661 (2011) ("Common law principles of restitution require a party to return a benefit when the retention of such benefit would unjustly enrich the recipient; a typical cause of action involving such remedy is 'quasi-contract.'")

196.     "When a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). "Whether termed unjust enrichment, quasi-contract, or quantum meruit, the equitable remedy of restitution when unjust enrichment has occurred "is an obligation (not a true contract [citation] created by the law without regard to the intention of the parties, and is designed to restore the aggrieved party to his or her former position by return of the thing or its equivalent in money." *F.D.I.C. v. Dintino*, 167 Cal. App. 4th 333, 346 (2008).

197.     Plaintiffs and Class Members conferred non-gratuitous benefits upon Defendant by paying for recordings Defendant could resell to law enforcement customers and profits derived therefrom.

198.     Defendant accepted or retained such benefits with knowledge that Plaintiffs and Class Members did not give permission to have their personal information disseminated to third parties for financial gain. Defendant has been unjustly enriched in retaining the revenues from Plaintiffs and Class Members' purchases of the Securus' phone services, which retention under these circumstances is unjust and inequitable because Defendant misrepresented the facts concerning the private nature of their phone calls and recording thereof without their permission or knowledge.

199.     Plaintiffs and Class Members would not have purchased phone services had they known that Securus was recording, monitoring, collecting, and disseminating their private phone calls to third parties, including law enforcement officials and prosecutors, for financial gain without their permission or knowledge, and in violation of their statutorily protected privacy rights

200.     Neither Plaintiffs nor the Class Members did discover, or could have discovered with any amount of reasonable diligence, the true facts regarding Securus' recording of their private attorney-client calls until March 3, 2016 when approximately 2,330 emails between the Sheriff's office and Securus' were published in response to a California Public Records Act request.  Plaintiffs and the Class Members were ignorant of the true facts regarding Securus' recording of their private attorney-client calls, and lacked the ability to have earlier discovered the true facts, until March 3, 2016 when the emails were published.  Discovery of the true facts did not actually occur, and could not have occurred, until after any applicable statutes of limitation, including the four-year statute of limitations for unjust enrichment.

201.     As a direct and proximate result of Defendant's false and/or misleading representations, assertions of fact, omissions of material fact, non-disclosures, and

- 49 -

illegal listening in on, recording, collecting, and disseminating private telephone calls, Plaintiffs and Class Members have suffered concrete harm and injury, including, but not limited to, monetary loss in connection with purchases of services, and an unconstitutional and illegal intrusion and invasion of their lawfully protected rights of privacy and effective assistance of counsel which they would otherwise not have purchased absent Defendant's unlawful conduct, as alleged herein.

202.    Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiffs and Class Members would be unjust and inequitable. Plaintiffs and Class Members are entitled to seek disgorgement and restitution of wrongful profits, revenue, and benefits conferred upon Defendant in a manner established by this Court.

203.    Plaintiffs and Class Members are further entitled to, and hereby seek, reasonable attorneys' fees and costs under Cal. Civ. Proc. Code § 1021.5, pre-and post-judgment interest at the applicable legal rate, as well as any and all further equitable relief that this Court deems appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the proposed Class, request the Court:

a.    Certify this case as a Class action on behalf of the Class defined above, appoint Juan Romero, Frank Tiscareno, and Kenneth Elliott as Class representatives, and appoint the Law Offices of Ronald A. Marron, APLC and Robert Teel as Class counsel;

b.    Award declaratory and other equitable relief as is necessary to protect the interests of Plaintiffs and Class Members;

c.    Award injunctive relief as is necessary to protect the interests of Plaintiffs and Attorney Class Members and Current Detainee Class Members;

d.    Award restitution and damages to Plaintiffs and Class Members in an amount to be determined at trial;

e.    Order disgorgement of Defendant's unjustly acquired revenue, profits,

*Romero et al v. Securus Technologies, Inc.* No. 16-cv-1283
THIRD AMENDED COMPLAINT

1    and other benefits resulting from their unlawful conduct for the benefit of Plaintiffs

2    and Class Members in an equitable and efficient manner determined by the Court;

3          f.    Order the imposition of a constructive trust upon Defendant such that its

4    enrichment, benefit, and ill-gotten gains may be allocated and distributed equitably by

5    the Court to and for the benefit of Plaintiffs and the Class Members.

6          g.    Award Plaintiffs and Class Members their reasonable litigation

7    expenses and attorneys' fees;

8          h.    Award Plaintiffs and Class Members pre- and post-judgment interest to

9    the extent allowable; and

10          i.    Award such other and further relief as equity and justice may require.

11    **JURY DEMAND**

12    Plaintiffs hereby demand a trial by jury on all issues so triable.

13    Dated:  February 8, 2017    */s/ Robert L. Teel*

14        By: Robert L. Teel
**LAW OFFICE OF ROBERT L. TEEL**

15    ROBERT L. TEEL

16    *lawoffice@rlteel.com*
207 Anthes Ave., Suite 201

17    Langley, Washington 98260

18    Telephone:   (866) 833-5529
Facsimile:   (855) 609-6911

19

20    **LAW OFFICES OF RONALD A.**

21    **MARRON, APLC**
RONALD A. MARRON

22    ALEXIS WOOD

23    KAS GALLUCCI
WILLIAM B. RICHARDS, JR.

24    651 Arroyo Drive

25    San Diego, California 92103
Telephone: (619) 696-9006

26    Facsimile: (619) 564-6665

27

28    ***Attorneys for Plaintiffs
and the Proposed Class***

- 51 -