1
2
3
4
5
6
7
8
9          UNITED STATES DISTRICT COURT
10         SOUTHERN DISTRICT OF CALIFORNIA
11

| | |
|---|---|
| JUAN ROMERO; FRANK TISCARENO; and KENNETH ELLIOTT, on behalf of themselves and all others similarly situated,<br><br>                             Plaintiffs,<br><br>v.<br><br>SECURUS TECHNOLOGIES, INC.,<br><br>                             Defendant. | Case No.:  16cv1283 JM (MDD)<br><br>**ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART MOTION FOR CLASS CERTIFICATION** |

        Presently before the court are Plaintiffs' motion for partial summary judgment (Doc. No. 101) and renewed motion for class certification (Doc. No. 122).  Defendant Securus Technologies, Inc. ("Securus") opposes both motions.  For the reasons discussed below, Plaintiffs' motion for class certification is granted in part and the motion for partial summary judgment is denied.

## BACKGROUND

        Plaintiffs Juan Romero, Frank Tiscareno, and Kenneth Elliot filed this putative class action on May 27, 2016, alleging Securus unlawfully recorded detainee-attorney calls. Securus provides inmate communication services for correctional facilities throughout

California.  Plaintiffs are two former inmates and a criminal defense attorney, all of whom used Securus' telephone systems to make calls to and from certain correctional facilities in California and allege that their calls were recorded.

## MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs seek summary judgment on one element of their claims—whether violation of California Penal Code § 636(a) requires Securus to intentionally record a conversation between a detainee and his or her attorney without permission.  (Doc. No. 101.)  For the reasons discussed below, Plaintiffs' motion is denied.

### I.    Legal Standards

A motion for summary judgment shall be granted where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  But Federal Rule of Civil Procedure 56 contains "no express or implied requirement . . . that the moving party support its motion with affidavits or other similar materials negating the opponent's claim."  Id. (emphasis in original).

In response to a motion for summary judgment, the nonmoving party cannot rest on the mere allegations or denials of a pleading, but must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  Id. at 324 (internal citations omitted).  In other words, the nonmoving party may not rely solely on conclusory allegations unsupported by factual data.  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  The court must examine the evidence in the light most favorable to the nonmoving party, United States v. Diebold, Inc., 369 U.S. 654, 655 (1962), and any doubt as to the existence of an issue of material fact requires denial of the motion, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

///

## II. Analysis

Plaintiffs argue that violation of California Penal Code § 636(a) does not require a defendant to <u>intentionally</u> record a conversation between a detainee and his or her attorney without permission. (Doc. No. 101.) Securus makes two arguments in opposition. (Doc. No. 103.) First, Securus argues that ruling on Plaintiffs' motion would be an advisory opinion. Second, Securus argues that § 636 has an intent requirement.

### A. Undisputed Facts

Plaintiffs cites[1] the following evidence indicating that Securus recorded phone calls between inmates and attorneys without their permission: To protect confidentiality, an attorney could designate his or her telephone number as private or "Do Not Record" in Securus' system. (Doc. No. 62-38, Elliott Decl. ¶ 5; Doc. No. 38-1, Jones Decl. ¶ 4.) This designation indicated that calls with the private number should not be recorded. (<u>See</u> Doc. No. 62-38, Elliott Decl. ¶ 5.)

In early 2014, the Sheriff's Department became aware that Securus recorded numerous inmate telephone calls with private numbers. (Doc. No. 62-27, Exh. 24.) On March 25, 2014, Captain Clamser of the Sheriff's Department emailed Securus stating that he had randomly reviewed the call logs for the period of April 1, 2013 through March 25, 2014 and found a number of private calls were recorded that should not have been. (<u>Id</u>. at 3-4.)[2] Captain Clamser stated that he knew Securus was "trying to determine why private calls are being recorded and I wanted to provide you with additional examples." (<u>Id</u>. at 3.) In a series of email exchanges between Captain Clamser and Securus employees during the period of April 4, 2014 to August 5, 2014, Securus indicated that it spent significant time and resources trying "to find the root cause" of "the issues of the private attorney calls that

_____

[1] Plaintiffs' motion for summary judgment cites to Securus' opposition to Plaintiffs' initial motion for class certification. Securus' opposition, in turn, cites to the exhibits to Plaintiffs' motion for class certification. These facts are drawn from the exhibits to Plaintiffs' initial motion for class certification. (Doc. Nos. 62-2 through 62-48.)

[2] All page citations in this memorandum refer to those created by the CM/ECF system.

are being recorded," but was unable to determine why the calls were recorded. (Doc. No. 62-4, Exh 1. at 18-62.) Securus attempted to reproduce the issue to find the cause, but in the emails before the court, the "root cause" of the issue was never discovered. (Id.) During this period, the Sheriff's Department emailed Securus on a rolling basis with lists of recorded private calls and asked Securus to delete the call recordings. (See id.) Securus regularly responded that it would purge the call recordings. (Id.) Securus' Director of Support Services, Ian Jones, declares that "Securus did purge certain calls it learned were recorded accidentally and that the San Diego County Sheriff's Office had specifically requested to be purged." (Doc. No. 38-1, Jones Decl. ¶ 7.)

These facts are undisputed for purposes of this motion as Securus cites no evidence disputing these facts.

**B. Advisory Opinion**

### 1. <u>Motion for Partial Summary Judgment</u>

Securus argues that ruling on the issue presented by Plaintiffs' motion would be "entirely academic" and amount to an advisory opinion as Plaintiffs "failed to show an absence of a material dispute regarding all facts that would trigger the need for any inquiry into whether California Penal Code Section 636(a) requires intent." (Doc. No. 103 at 4-5.) Specifically, Securus argues that Plaintiffs "merely recite Plaintiffs' own views about other aspects of the record." (Id. at 2.)

The question presented in Plaintiffs' motion for summary judgment is not hypothetical or "academic." Rule 56 provides that a "party may move for summary judgment, identifying each claim or defense—<u>or the part of each claim or defense</u>—on which summary judgment is sought." Fed. R. Civ. P. 56(a) (emphasis added). <u>See also Pinnacle Fitness & Recreation Mgmt., LLC v. Jerry & Vickie Moyes Family Tr.</u>, 844 F. Supp. 2d 1078, 1093 (S.D. Cal. 2012). Plaintiffs seek summary judgment on one element of their California Invasion of Privacy Act ("CIPA") claims—whether Securus had the intent, if any, necessary to violate the statute. Plaintiffs cite evidence indicating that Securus inadvertently recorded inmate-attorney calls. Although Plaintiffs specifically cite

to Securus' opposition to Plaintiffs' motion for class certification, this opposition summarizes and cites to evidence in the record that the court may consider on summary judgment. See Fed. R. Civ. P. 56(c)(1). Whether this evidence is sufficient to grant Plaintiffs' motion for summary judgment on the intent element is an issue properly decided by the court.

### 2. Article III Standing

Securus argues that Plaintiffs lack standing because there is no evidence Plaintiffs suffered "an injury in fact." Securus argues that Plaintiffs fail to present any evidence that their calls with persons covered by § 636(a) were recorded.

As the party putting the claims before the court, Plaintiffs bear the burden of establishing jurisdiction. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). There is no subject matter jurisdiction without standing, and the "irreducible constitutional minimum" of standing consists of three elements. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). A plaintiff must have (1) suffered an injury in fact, (2) which is fairly traceable to the challenged conduct of the defendant, and (3) which is likely to be redressed by a favorable judicial decision. Id. at 560–61. To establish injury in fact—the relevant element here—the plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Id. at 560 (internal quotations omitted). To prevail on his or her motion for summary judgment, "a plaintiff must establish that there exists no genuine issue of material fact as to justiciability or the merits." Dep't of Commerce v. U.S. House of Representatives, 525 U.S. 316, 329 (1999) (citing Lujan, 497 U.S. at 884). "In a class action, standing is satisfied if at least one named plaintiff meets the requirements." Bates v. United Parcel Serv., Inc., 511 F.3d 974, 985 (9th Cir. 2007).

In their reply brief, Plaintiffs cite to evidence (previously cited in their initial motion for class certification) indicating that the named Plaintiffs' calls were recorded. Plaintiffs Romero and Tiscareno declare that a March 25, 2014 email from the Sheriff's Department indicates that their attorney's phone number was recorded between April 2013 and March

2014.  (Doc. No. 62-41, Romero Decl. ¶ 7; Doc. No. 62-42, Exh. 1; Doc. No. 62-43, Tiscareno Decl. ¶ 7; Doc. No. 62-44, Exh. 1.)[3]  Additionally, an exhibit attached to Securus' interrogatory responses indicates that on February 20, 2014, Romero's call with his attorney's telephone number was recorded.  (Doc. No. 74-2, Exh. 1 at 29.)  Plaintiff Elliott's telephone number[4] was also among those identified in the Sheriff Department's March 25, 2014 email as recorded.  (Doc. No. 62-40, Exh. 2 at 4.)  The same exhibit attached to Securus' interrogatory responses further indicates that a call with Elliott's number was recorded on November 6, 2013.  (Doc. No. 74-2, Exh. 1 at 25.)

Securus "fail[s] to set forth any specific facts showing that there is a genuine issue of standing for trial" as to whether Plaintiffs' calls were recorded.  See Dep't of Commerce, 525 U.S. at 330.  The evidence suggests that Securus recorded Elliott's call with an inmate and Romero's call with his attorney's number.  Securus cites no evidence disputing Plaintiffs' evidence and did not raise any objections to this evidence during the hearing.  In sum, on the record before the court there is not a genuine issue of material fact on the issue of whether Plaintiffs have standing.

**C. Section 636(a) Is Not a Strict Liability Offense**

Plaintiffs argue that § 636(a) is a strict liability offense.  This subdivision is not a strict liability offense as it does not expressly or by necessary implication exclude an intent requirement.

///

///

---

[3] Romero and Tiscareno declare that the telephone number of their attorney during the times they were detained was (619) 231-0401.  (Doc. No. 62-41, Romero Decl. ¶ 6; Doc. No. 62-42, Tiscareno Decl. ¶ 7.)  An email the Sheriff's Department sent to Securus indicates that a telephone call with this number was recorded sometime between April 1, 2013 and March 25, 2014.  (Doc. No. 62-42, Exh. 1; Doc. No. 62-44, Exh. 1.)
[4] Elliott's number is "760-630-3333."  (Doc. No. 74-4, Elliott Decl. ¶¶ 2-3.)  An email the Sheriff's Department sent to Securus also indicates that a telephone call with this number was recorded.

### 1. **Plain Language of § 636**

Plaintiffs argue that the plain language of § 636(a) does not impose an intent requirement, unlike other sections of the California Invasion of Privacy Act ("CIPA") such as §§ 632(a), 632.7(a), and 636(b).

"In interpreting a state statute, we must determine what meaning the state's highest court would give to the law." Bass v. Cty. of Butte, 458 F.3d 978, 981 (9th Cir. 2006). Thus, the court must follow the state's rules of statutory interpretation. Id. "As in any case involving statutory interpretation, our fundamental task is to determine the Legislature's intent so as to effectuate the law's purpose." Id. at 981-82. (quoting People v. Murphy, 25 Cal. 4th 136 (2001)). A court should "examine the language itself, the legislative history of the provision and case law construing the crucial language, in that order." People v. Childs, 220 Cal. App. 4th 1079, 1098 (2013) (citing People v. Heitzman, 9 Cal. 4th 189, 200 (1994)). A statute's language should be given a "plain and commonsense meaning." Bass, 458 F.3d at 982 (quoting Murphy, 25 Cal. 4th 136). "However, text is not to be interpreted in isolation." Id. "Rather, we must look to 'the entire substance of the statute . . . in order to determine the scope and purpose of the provision.'" Id.

Section 636(a) provides in full—

(a) Every person who, without permission from all parties to the conversation, eavesdrops on or records, by means of an electronic device, a conversation, or any portion thereof, between a person who is in the physical custody of a law enforcement officer or other public officer, or who is on the property of a law enforcement agency or other public agency, and that person's attorney, religious adviser, or licensed physician, is guilty of a felony punishable by imprisonment pursuant to subdivision (h) of Section 1170.

The next subdivision, § 636(b), prohibits non-electronic eavesdropping and provides in part—

(b) Every person who, intentionally and without permission from all parties to the conversation, nonelectronically eavesdrops upon a conversation, or any portion thereof, that occurs between a person who is in the physical custody of a law enforcement officer or other public officer and that person's attorney, religious adviser, or licensed physician, is guilty of a public offense. . . . This subdivision does

7

not apply to conversations that are inadvertently overheard or that take place in a courtroom or other room used for adjudicatory proceedings.

(emphasis added). Similarly, § 632(a) prohibits a person from "intentionally" eavesdropping on a confidential communication through electronic means, and § 632.7 prohibits "intentionally" recording cordless and cellular telephone communications. Plaintiffs argue that if the legislature intended subdivision (a) to have a mens rea requirement there would be language to that effect, especially when this subdivision is compared to the express intent requirement of subdivision (b) and §§ 632(a) and 632.7(a).

The absence of the word "intentionally" in § 636(a), when compared with §§ 632(a), 632.7(a), and 636(b), suggests that the legislature excluded this word. But it is not clear from the language of the statute whether omission of this word was meant to exclude any intent requirement from this criminal offense.

### 2. **Public Welfare Offenses**

The California Supreme Court set forth a framework for analyzing criminal statutes without an express intent requirement in In re Jorge M., 23 Cal. 4th 866, 872 (2000). "That the statute contains no reference to knowledge or other language of mens rea is not itself dispositive." Id. at 872. "When a criminal statute . . . fails to expressly articulate the requisite scienter, . . . [o]n occasion, and particularly for public welfare offenses, a statute will omit any reference to scienter, because no scienter is required." People v. Hall, 2 Cal. 5th 494, 501 (2017) (citing Stark v. Superior Court, 52 Cal. 4th 368, 393 (2011)). "More commonly, though, courts construe criminal statutes against the backdrop of the common law presumption that scienter is required and imply the requisite mental state, even where the statute is silent." Id. (citing Staples v. United States, 511 U.S. 600, 605-06 (1994); In re Jorge M., 23 Cal. 4th at 872). The general rule that a defendant must have "some form of guilty intent, knowledge, or criminal negligence is of such long standing and so fundamental to our criminal law" that this requirement "is an invariable element of every

8

crime unless excluded expressly or by necessary implication." In re Jorge M., 23 Cal. 4th at 872 (internal citations omitted).

Public welfare offenses are generally "based upon the violation of statutes which are purely regulatory in nature and involve widespread injury to the public." Id. (citation omitted). "Examples of such statutes are furnishing alcohol to a minor (In re Jennings (2004) 34 Cal. 4th 254, 266. . .), sale of adulterated food (In re Casperson (1945) 69 Cal. App. 2d 441, 443. . .) and driving with a prohibited blood-alcohol concentration (Ostrow v. Municipal Court (1983) 149 Cal. App. 3d 668. . .)." People v. King, 38 Cal. 4th 617, 623 (2006). "These offenses usually involve light penalties and no moral obloquy or damage to reputation. Although criminal sanctions are relied upon, the primary purpose of the statute is regulation rather than punishment or correction." Id.

In recent jurisprudence, the California Supreme Court has repeatedly declined to construe statutes without an express intent requirement as strict liability offenses. See, e.g., Stark, 52 Cal. 4th at 393 (embezzlement statute criminalizing appropriation of public funds is not a strict liability offense); People v. Simon, 9 Cal. 4th 493, 519–21 (1995) (criminal violation of Corporations Code section 25401, prohibiting the offer or sale of securities by means of materially false statements or omissions, is not a strict liability offense); People v. Rubalcava, 23 Cal. 4th 322, 332 (2000) (penal code § 12020, prohibiting the carrying of a concealed dirk or dagger, is not a strict liability offense); King, 38 Cal. 4th at 624-26 (statute prohibiting possession of short-barreled firearm is not a strict liability offense). But see In re Jennings, 34 Cal. 4th 254 (2004) (statutory misdemeanor offense of purchasing alcohol for persons under 21 years of age is a public welfare offense because legislative history weighed heavily against an intent requirement, offense was a misdemeanor, and it sought to prevent widespread and serious harm to the public). The California Supreme Court has expressly recognized a "prevailing trend 'away from the imposition of criminal sanctions in the absence of culpability where the governing statute, by implication or otherwise, expresses no legislative intent or policy to be served by imposing strict liability." Simon, 9 Cal. 4th at 521 (citation omitted).

Where legislative intent is not readily discerned from the text of the statute itself, as in this case, the California Supreme Court has found consideration of the following factors useful: (1) legislative history and context; (2) general provisions on mens rea or strict liability crimes; (3) severity of the punishment provided for the crime; (4) seriousness of harm to the public that may be expected to follow from the forbidden conduct; (5) a defendant's opportunity to ascertain the true facts; (6) difficulty prosecutors would have in proving a mental state for the crime; and (7) number of expected prosecutions under the statute. In re Jorge M., 23 Cal. 4th at 873.

### i. **Legislative History**[5]

The legislative history of § 636 lends itself to more than one interpretation, but does not expressly or by necessary implication exclude an intent requirement from subdivision (a). CIPA (§ 630 et seq.) was enacted in 1967, replacing prior laws that permitted the recording of telephone conversations with the consent one party to the conversation. In 1967, current subdivisions (a) and (c) were enacted together as a single § 636. (Doc. No. 101-3, Exh. 1 at 10.) At that time, § 636 did not include the word "intentionally" or any other mens rea language.[6]

---

[5] Plaintiffs request the court take judicial notice of a former version of Cal. Penal Code § 636 and both parties request the court take judicial notice of excerpts of the statute's legislative history. (Doc. No. 101-3; Doc. No. 103-2.) The court grants both requests. See Zephyr v. Saxon Mortg. Servs., Inc., 873 F. Supp. 2d 1223, 1226 (E.D. Cal. 2012) (taking judicial notice of legislative history of Cal. Penal Code § 632).

[6] As enacted in 1967, § 636 provided in full: "Every person, who, without permission from all parties to the conversation, eavesdrops on or records by means of an electronic or other device, a conversation, or any portion thereof, between a person who is in the physical custody of a law enforcement officer or other public officer, or who is on the property of a law enforcement agency or other public agency, and such person's attorney, religious advisor, or licensed physician, is guilty of a felony; provided, however, the provisions of this section shall not apply to any employee of a public utility engaged in the business of providing service and facilities for telephone or telegraph communications while engaged in the construction, maintenance, conduct or operation of the service or facilities of such public utility who listens in to such conversations for the limited purpose of testing or servicing such equipment."

In 1995, the legislature broke § 636 into three subdivisions. The original language was retained as subdivision (a), but narrowed to include only electronic eavesdropping and recording. Subdivision (b), prohibiting a person from "intentionally" eavesdropping on conversations through non-electronic means, was added for the first time. The committee and Assembly analyses suggest that the word "intentionally" was specifically omitted from subdivision (a) but included in subdivision (b).

On February 24, 1995, a bill to amend § 636 was introduced that would have made the following changes to the 1967 statute:[7]

> 636. Every person who, *intentionally and* without permission from all parties to the conversation, eavesdrop on or records ~~by means of an electronic or other device~~, *in any manner,* a conversation, or any portion thereof, between a person who is in the physical custody of a law enforcement officer or other public officer, or who is on the property of a law enforcement agency or other public agency, and ~~such~~ *that* person's attorney, religious advisor, or licensed physician, is guilty of a felony . . .

Assem. Bill 1892, 1995-1996 Reg. Sess. (Cal. Feb. 24, 1995). The proposed bill stated that it would "revise this provision to narrow its scope by providing it applies to persons who eavesdrop on this kind of conversation intentionally and without permission, and to expand its scope by providing it applies to persons who eavesdrop on this kind of conversation in any manner." Id.

On May 2, 1995, the Assembly Committee on Public Safety analysis of this version of the bill found that "[u]nder current law . . . [i]n every crime or public offense, there must exist a union, or joint operation of act and intent, or criminal negligence. (Penal Code section 20.)." Assem. Comm. on Pub. Safety, Bill Analysis of Assem. Bill 1892, 1995-1996 Reg. Sess., at 1 (Cal. 1995). Thus, the analysis found, "[c]urrent law already requires that the defendant intentionally eavesdrop and that he or she engage in that activity without permission." Id. at 2.

---

[7] Additions are italicized and deletions are struck through.

16cv1283 JM (MDD)

The Committee's analysis also noted that the bill was "prompted by a single case in which a Deputy District Attorney is alleged to have engaged in unethical activity by directing an investigator to position herself in a place where she could deliberately overhear certain conversations between a criminal defendant and the defendant's attorney." Id. This case was Morrow v. Superior Court, 30 Cal. App. 4th 1252 (1994). In Morrow, a deputy district attorney and investigator conspired to eavesdrop on a conversation between burglary suspect and his counsel in a courtroom holding area. Id. The attorney general filed criminal charges against the district attorney and investigator for violation of § 636, but the charges were dismissed on the grounds that the statute was ambiguous and applied only to electronic eavesdropping. Id. at 1256. The author of the bill indicated that the bill's purpose was "to widen the currently narrow interpretation of eavesdropping, Penal Code section 636. This statue [sic] is intended to protect a person's Sixth Amendment right to counsel and must be amended to clearly prohibit any form of intentional eavesdropping which threatens a person's right to counsel." Assem. Comm. on Pub. Safety, Bill Analysis of Assem. Bill 1892, 1995-1996 Reg. Sess., at 2 (Cal. 1995). The Committee's comments indicate that some representatives had concerns that this version of the bill was overbroad and would apply in situations where there was no reasonable expectation of privacy. See id. at 2-4.

The bill was amended on May 4, 1995, as follows:

636. *(a)* Every person who, ~~intentionally and~~ without permission from all parties to the conversation, eavesdrops on or records, ~~in any manner~~ *by means of an electronic or other device*, a conversation, or any portion thereof, between a person who is in the physical custody of a law enforcement officer or other public officer, or who is on the property of a law enforcement agency or other public agency, and that person's attorney, religious advisor, or licensed physician, is guilty ~~of a felony; provided, however, the provisions of this~~ of a felony.

*(b)     Every person who, intentionally and without permission from all parties to the conversation, nonelectronically eavesdrop upon a conversation, or any portion thereof, that occurs between a person who is in the physical custody of a law enforcement or other public officer and that person's attorney, religious advisor, or licensed physician is guilty of a public offense. This subdivision applies*

> *to conversations that occur in a place, and under circumstances, where there exists a reasonable expectation of privacy, including a custody holding area, holding area, or anteroom. This subdivision does not apply to conversations that are inadvertently overheard or that take place in a courtroom or other room used for adjudicatory proceedings.*

Assem. Bill 1892, 1995-1996 Reg. Sess. (Cal. May 4, 1995) (subdivision (c) omitted). The bill's language regarding the purpose of the bill also changed. The statement that the amendment would "narrow [the statute's] scope by providing it applies to persons who eavesdrop on this kind of conversation intentionally and without permission," was removed, among other deletions and additions. Id.

On May 30, 1995, the bill was amended a second time. The third version of the bill clarified that the purpose of the amendment was to ensure subdivision (a) "apply only to eavesdropping by means of an electronic device." Assem. Bill 1892, 1995-1996 Reg. Sess. (Cal. May 30, 1995). The language of subdivision (a) was amended as follows:

> (a)  Every person who, without permission from all parties to the conversation, eavesdrops on or records by means of an electronic ~~or other~~ device, a conversation, or any portion thereof, between a person who is in the physical custody of a law enforcement officer or other public officer, or who is on the property of a law enforcement agency or other public agency, and that person's attorney, religious advisor, or licensed physician, is guilty of a felony.

Id.

On June 13, 1995, the Senate Committee on Criminal Procedure held a hearing on the third version of the bill. The Committee's analysis of the bill indicated that the amendment "changes the felony provision [subdivision (a)] of eavesdropping law to apply only to eavesdropping by electronic device and adds a wobbler provision [subdivision (b)] prohibiting the intentional non-electronic eavesdropping on a conversation between an in-custody defendant and his/her attorney . . . ." Assem. Comm. on Crim. Proc., Bill Analysis of Assem. Bill 1892, 1995-1996 Reg. Sess., at 2 (Cal. June 3, 1995). The analysis noted that "[t]he purpose of this bill is to prohibit all intentional eavesdropping on conversations between and [sic] in-custody defendant and his/her attorney, religious advisor or licensed

physician under circumstance [sic] where there is a reasonable expectation of privacy." Id. According to the author, the bill "applies only to the narrow circumstances that precipitated its introduction"—Morrow, 30 Cal. App. 4th 1252.

Before enactment, the Assembly analysis of the third version of the bill found that it: "1) Removes the intent requirement when eavesdropping is done by electronic means under specified circumstances. 2) Expands eavesdropping law by applying the law to non-electronic but intentional eavesdropping done without permission under specified circumstances." Assem. Third Reading, Bill Analysis of Assem. Bill 1892, 1995-1996 Reg. Sess., at 1 (Cal. 1995). The analysis found that "[t]his statute is intended to protect a person's Sixth Amendment right to counsel and to clearly prohibit any form of intentional eavesdropping which threatens a person's right to counsel." Id. at 2.

The third version of the bill was enacted on July 17, 1995. Assem. 1892, 1995-1996 Reg. Sess. ch. 129 (Cal. 1995). Section 636(a) was amended again in 2011, adding that violation of subdivision (a) was "punishable by imprisonment pursuant to subdivision (h) of Section 1170." Assem. 109, 2011-2012 Reg. Sess. ch. 15 (Cal. 2011).

The legislative history of § 636 does not expressly or by necessary implication exclude an intent requirement from subdivision (a). Although susceptible to multiple interpretations, the legislative history could be read as imbuing § 636(a) with an intent requirement. The Assembly Committee on Public Safety's analysis of the first version of the 1995 bill quoted Penal Code § 20 and found that "[c]urrent law already requires that the defendant intentionally eavesdrop and that he or she engage in that activity without permission." Removal of the word "intentionally" from subdivision (a) in the second version of the bill could thus be viewed as the deletion of unnecessary language. See People v. Sainz, 74 Cal. App. 4th 565, 573 (1999) ("Failure to make changes in a given statute in a particular respect when the subject is before the Legislature, and changes are made in other respects, is indicative of an intention to leave the law unchanged in that respect.") (quoting People v. Lewis, 21 Cal. App. 4th 243, 248 (1993)). Committee analyses found that the purpose of the 1995 amendments was to prohibit "any form of

intentional eavesdropping which threatens a person's right to counsel" and "all intentional eavesdropping," without specifically limiting this purpose to subdivision (b). Lastly, the 1995 amendments that added subdivision (b) were aimed solely at addressing the narrow issue before the legislature—eavesdropping through non-electronic means.[8]

### ii. General Provision on Mens Rea

California Penal Code § 20 is a generally applicable rule on mens rea that applies in this case. In re Jorge M., 23 Cal. 4th at 879. Section 20 provides that "[i]n every crime or public offense there must exist a union, or joint operation of act and intent, or criminal negligence." It requires "an intent to do the forbidden thing or commit the interdicted act," but does not require "a specific purpose or intent to violate the law." Stark, 52 Cal. 4th at 392 (quoting People v. Dillon, 199 Cal. 1, 7 (1926)). It requires "wrongful intent." Id. (emphasis in original). Although not inflexible, "where the penalties imposed are substantial, section 20 can fairly be said to establish a presumption against criminal liability without mental fault or negligence, rebuttable only by compelling evidence of legislative intent to dispense with mens rea entirely." In re Jorge M., 23 Cal. 4th at 879. This presumption applies here.

///

///

---

[8] Securus argues that In re Arias, 42 Cal. 3d 667 (1986) establishes that § 636 only prohibits intentional recording or eavesdropping. In this case, the California Supreme Court noted in dictum that "[t]he Privacy Act has been held to proscribe only intentional as opposed to inadvertent overhearing or interception of communications." Id. at 682 n.14 (citing People v. Buchanan 26 Cal. App. 3d 274, 287 (1972)). This dictum does not decide the issue. Buchanan held only that §§ 631(a) and 632(a), which proscribe "intentionally" eavesdropping, require intentional wiretapping and eavesdropping, Buchanan, 26 Cal. App. 3d at 288. The other cases Securus cites for the proposition that any violation of CIPA must be intentional are similarly inapposite. See People v. Superior Court of Los Angeles Cty., 70 Cal. 2d 123 (1969) (stating in dictum that Cal. Penal Code § 653j, now § 632, which proscribed "intentionally" eavesdropping had an intent requirement); People v. Algire, 222 Cal. App. 4th 219 (2013) (holding § 632, which proscribes "intentionally" eavesdropping, has an intent requirement).

### iii. Severity of Punishment

A person who violates § 636(a) "is guilty of a felony punishable by imprisonment pursuant to subdivision (h) of Section 1170." Cal. Penal Code. § 636(a). Penal Code § 1170(h) provides in relevant part that "a felony punishable pursuant to this subdivision where the term is not specified in the underlying offense shall be punishable by a term of imprisonment in a county jail for 16 months, or two or three years." A felony is a harsh punishment. As the California Supreme Court discussed in In re Jorge M.,

> In Staples, [511 U.S. at 618], the United States Supreme Court observed that its own early cases "might suggest that punishing a violation as a felony is simply incompatible with the theory of the public welfare offense." The high court ultimately found it unnecessary to embrace that view as a definitive rule, but did conclude the harsh potential penalties—up to 10 years' imprisonment—imposed under the federal law at issue for possession of an unregistered machine gun militated strongly against a construction dispensing with mens rea. This court agreed with Staples's skepticism about felony punishment for putative public welfare offenses in People v. Coria, [21 Cal. 4th 868, 877 (1999)], observing that manufacturing methamphetamine "is a felony, which is as bad a word as you can give to man or thing." Such an offense, we concluded, is difficult to characterize as "a mere regulatory statute which imposes light penalties with no damage to reputation."

In re Jorge M., 23 Cal. 4th at 879-80 (internal citations omitted). Felony punishment "reinforces the presumption expressed by section 20 and suggests that correspondingly strong evidence of legislative intent is required to exclude mens rea from the offense." Id. at 880. This factor weighs against strict liability.

### iv. Seriousness of Harm to Public

"[W]hen a crime's statutory definition does not expressly include any scienter element, the fact the Legislature intended the law to remedy a serious and widespread public safety threat militates against the conclusion it also intended impliedly to include in the definition a scienter element especially burdensome to prove." Id. at 881. Plaintiffs argue that subdivision (a) has no intent requirement "likely due to the exponential advance

of electronic eavesdropping and surveillance technology, as well as the rising public welfare concerns associated with data privacy." (Doc. No. 101-1 at 14.)

In enacting the CIPA, the legislature "declare[d] that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." Cal. Penal Code § 630. This factor weighs in favor of strict liability as the legislature sought to avoid a serious harm to the public. But it is not clear that strict liability is necessary to avoid this harm. Cf. People v. Simon, 9 Cal. 4th 493, 521 (1995) ("Eavesdropping is not one of that class of crimes that affects public health, welfare or safety for which strict liability is most often imposed without any ingredient of intent."). To the contrary, other sections of the CIPA prohibiting electronic eavesdropping expressly include an intent element. See Cal. Penal Code §§ 631(a), 632(a).

### v. Opportunity to Ascertain True Facts

"Courts have been justifiably reluctant to construe offenses carrying substantial penalties as containing no mens rea element 'where dispensing with *mens rea* would require the defendant to have knowledge only of traditionally lawful conduct.'" In re Jorge M., 23 Cal. 4th at 881 (quoting Staples, 511 U.S. at 615 ("It is unthinkable to us that Congress intended to subject such law-abiding, well-intentioned citizens to a possible ten-year term of imprisonment if what they genuinely and reasonably believed was a conventional semi-automatic weapon turns out to have worn down into or been secretly modified to be a fully automatic weapon.") (citation omitted)). Under some circumstances, a person may lawfully record conversations. Here, without a mens rea requirement, a person could be liable for violation of § 636(a) without any knowledge that his or her traditionally lawful conduct was proscribed. Or, for that matter, as Plaintiffs urge, without knowledge the conversations were being recorded. Absent knowledge that a conversation between a person in custody and his or her attorney, licensed physician, or religious advisor

was being recorded, the conduct could be entirely innocent.  See Coria, 21 Cal. 4th at 880 (offense proscribing manufacture of methamphetamine required knowledge of manufactured substance as "[n]ot all acts of chemical synthesis are illegal; only the manufacture of specific controlled substances is prohibited"); King, 38 Cal. 4th at 626 ("It is highly unlikely that the Legislature intended that a person possessing an item listed in section 12020(a)(1) for its lawful, utilitarian purpose, but unaware of the characteristic that makes possession of the item illegal, would nevertheless be guilty of violating section 12020(a)(1).").  For example, a court reporter that leaves a courtroom recording system running after a hearing ends could inadvertently capture a conversation between an attorney and his or her client in the courtroom without any knowledge that the conduct was proscribed.  This factor weighs against strict liability.

### vi. __Difficulty of Proving Mental State__

As discussed above, the legislature sought to avoid a serious harm to the public with enactment of CIPA, and the statute should not construed in a manner that would impair its effective enforcement.  See In re Jorge M., 23 Cal. 4th at 884-85.  But nothing before the court indicates that strict liability is necessary for effective enforcement of § 636(a).  The conduct proscribed in § 636(a) does not necessarily present special obstacles to the prosecution in proving a defendant's mental state.  Even if this factor were to weigh in favor of strict liability, however, it is not dispositive.  Id. (difficulty of proving mental state factor weighed in favor of strict liability, but did not require it, when scienter requirement of less than actual knowledge alleviated effective enforcement concerns).[9]

### vii. __Number of Expected Prosecutions__

"The fewer the expected prosecutions, the more likely the legislature meant to require the prosecuting officials to go into the issue of fault."  In re Jorge M., 23 Cal. 4th at 873 (citation omitted).  The CIPA indicates that new devices and technologies allowing

---

[9] The court does not consider whether § 636(a) requires criminal negligence or actual knowledge as the parties do not address this issue in their briefing.

a person to eavesdrop represent a serious threat to privacy, but is silent about the number of expected prosecutions. Cal. Penal Code § 630. The context of the statute and legislative history of § 636(a) do not indicate whether a high number of prosecutions were expected. This factor is inconclusive.

In sum, although § 636(a) "can be characterized as a remedial law aimed at protecting public welfare, its text, history and surrounding statutory context provide no compelling evidence of legislative intent to exclude all scienter from the [statute]." In re Jorge M., 23 Cal. 4th at 887. The presumption against criminal liability without mental fault or negligence provided by Penal Code § 20 is reinforced by the severity of felony punishment and the possibility of proscribing traditionally lawful conduct. Section 636(a) protects against a serious public harm, but not all statutes protecting against serious public harm require strict liability to accomplish this goal. See In re Jorge M., 23 Cal. 4th at 887. Section 636(a) is not an exception to the general rule that a defendant must have wrongful intent to be guilty of a crime.[10]

## III. Conclusion

Plaintiffs' motion for summary judgment is denied as § 636(a) is not a strict liability offense and Plaintiffs fail to establish there is no genuine issue of material fact as to whether Securus had the intent necessary to violate the statute.

## MOTION FOR CLASS CERTIFICATION

Also before the court is Plaintiffs' Renewed Motion for Class Certification Or, In the Alternative, Extension of Time ("renewed motion for class certification"). (Doc. No.

---

[10] Plaintiffs argue that this case involves civil liability, as it was filed pursuant to § 637.2, not criminal liability. Plaintiffs cite no case, and the court is not aware of any, suggesting that a different standard should apply in these circumstances, where a civil action is filed for violation of an underlying criminal offense. The language of § 637.2 suggests otherwise. Section 637.2 provides that "[a]ny person who has been injured by a violation of this chapter may bring an action against the person who committed the violation." Cal. Penal Code § 637.2(a) (emphasis added). Plaintiffs allege that Securus was in "violation of" § 636(a).

122.)  Securus opposes.  (Doc. No. 124.)  For the reasons discussed below, the motion is granted in part.

## I.  Background

On October 10, 2017, Plaintiffs filed a motion for class certification.  (Doc. No. 62.)  The court denied Plaintiffs' motion, finding that Plaintiffs failed to sufficiently identify an ascertainable class as the proposed class may have included anywhere between 22 and thousands of members.  (Doc. No. 93.)  On April 20, 2018, Securus filed a motion to alter or amend the order denying Plaintiffs' motion for class certification arguing that, contrary to the court's order, Securus had produced call logs by the time briefing on Plaintiffs' motion for class certification was complete.  (Doc. No. 99.)  The court denied Securus' motion, stating that Securus could raise any arguments regarding factual discrepancies in its opposition to Plaintiffs' renewed motion for class certification.  (Doc. No. 127.)

## II.  Legal Standards

It is within this court's discretion to certify a class.  <u>Bouman v. Block</u>, 940 F.2d 1211, 1232 (9th Cir. 1991).  Under Rule 23(a), the class must satisfy four prerequisites: "(1) numerosity of [parties], (2) common questions of law or fact predominate, (3) the named [party's] claims and defenses are typical, and (4) the named [party] can adequately protect the interests of the class."  <u>Hanon v. Dataproducts</u>, 976 F.2d 497, 508 (9th Cir. 1992).  In addition to satisfying the requirements of Rule 23(a), Plaintiffs must satisfy at least one of the types of class actions identified in Rule 23(b).  <u>Briseno v. ConAgra Foods, Inc.</u>, 844 F.3d 1121, 1124 (9th Cir. 2017).  Here, Plaintiffs argue that the class satisfies both Rule 23(b)(2) (the class is subject to common policies or unlawful acts, justifying injunctive relief) and Rule 23(b)(3) (questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy).

The party seeking certification bears the burden of showing that each of the four requirements of Rule 23(a), and at least one requirement of Rule 23(b), has been satisfied.

Dukes v. Wal-Mart Stores, Inc., 603 F.3d 571, 580 (9th Cir. 2010) (en banc), rev'd on other grounds, 564 U.S. 338 (2011).  As noted by the Ninth Circuit,

> When considering class certification under rule 23, district courts are not only at liberty to, but must, perform a rigorous analysis to ensure that the prerequisites of Rule 23(a) have been satisfied. It does not mean that a district court must conduct a full-blown trial on the merits prior to certification. A district court's analysis will often, though not always, require looking behind the pleadings, even to issues overlapping with the merits of the underlying claims.

Id. at 581.  In making this showing, the plaintiff must submit evidence to support class certification under Rules 23(a) and (b).  Doninger v. Pacific Northwest Bell, Inc., 564 F.2d 1304, 1308-09 (9th Cir. 1977).  If the plaintiff fails to show that all elements of class certification are satisfied, class certification should be denied.  Gen. Tel. Co. v. Falcon, 457 U.S. 147, 161 (1982).

## III. Discussion

### A. Securus' Initial Objections

As an initial matter, Securus argues that the court should not consider the merits of Plaintiffs' renewed motion for class certification for two reasons.  First, Securus argues that Plaintiffs' renewed motion for class certification is actually a motion for reconsideration of the court's order denying Plaintiffs' initial motion for class certification. Securus argues that Plaintiffs present no "new evidence" as the disputed call logs were produced prior to the close of briefing on Plaintiffs' initial motion for class certification and Plaintiffs simply reargue their previous points.  This argument is unpersuasive. Plaintiffs represent, and Securus does not dispute, that Securus did not produce some documents relied upon in the instant motion until October 30, 2017, after Plaintiffs' initial motion for class certification was filed.  (Doc. No. 122-2, Ridley Decl. ¶ 24.)  In addition, Plaintiffs represent, and Securus does not dispute, that Securus did not identify what discovery requests its October 30, 2017 supplemental production responded to until November 20, 2017, after the motion for class certification was fully briefed.  (Id.)

Second, Securus argues that the named Plaintiffs do not have standing to pursue class claims. Securus raises a number of arguments in support of this contention. First, Securus argues that Plaintiffs "produce no competent evidence" that Securus recorded any of their calls. (Doc. No. 124 at 18.) As discussed in the standing analysis of Plaintiffs' motion for partial summary judgment, Plaintiffs produce evidence indicating that Securus recorded Plaintiffs' calls. <u>Supra</u> Section II.B.2. In its opposition to Plaintiffs' renewed motion for class certification, Securus makes no specific objections to this evidence.

Second, Securus argues there is no evidence that it intentionally recorded any private number calls. As the court held in its prior order denying Plaintiffs' motion for class certification, this argument is not properly raised in a motion for class certification. (Doc. No. 93 at 2 n.1.)

Third, Securus argues there is no evidence that the recordings captured conversations between persons covered by the statute—detainees and attorneys. Securus cites to Plaintiff Elliott's declaration that his staff and employees use the numbers designated as private for confidential and privileged communications with detainee clients, (Doc. No. 62-38, Elliott Decl. ¶¶ 8-9), and Plaintiffs Romero and Tiscareno's declarations that they used Securus' phone system for confidential and privileged calls with their attorneys and their attorneys' staff. (Doc. No. 62-41, Romero Decl. ¶¶ 8-9; Doc. No. 62-43, Tiscareno Decl. ¶¶ 8-9.) Securus also cites to an email exchange between the Sheriff's Office and Securus employees indicating that five probation office numbers may have been erroneously included in a list of numbers designated as private. (Doc. No. 62-28, Exh. 25 at 2-3.)

A rigorous review of the evidence indicates that Securus admits to recording detainee calls with telephone numbers belonging to an attorney and registered as private. (Doc. No. 62-38, Elliott Decl. ¶¶ 8-9; Doc. No. 62-4, Exh. 1.) In email, Securus employees repeatedly referred to these recorded calls as "attorney calls." (Doc. No. 62-4, Exh. 1 at 46-48, 62.) Securus presents no evidence (or argument) that people other than an attorney or his or her staff used numbers designated by attorneys as private. An attorney may hire agents, including paralegals and assistants, to engage in confidential communications with

clients.  See Cal. Evid. Code § 952.  This evidence is sufficient for class certification purposes to establish that Securus recorded calls between detainees and attorneys or their staff.  If a probation office or other non-attorney numbers were designated as private and are included in the class list these numbers can be identified and excluded.

Lastly, Securus argues there is no evidence of a concrete injury because Securus purged the recordings.  As the court previously held, violation of CIPA is the violation of a procedural right granted by statute, sufficient to constitute an injury in fact.  (Doc. No. 21 at 9) (citing Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1549 (2016).)  "In a class action, standing is satisfied if at least one named plaintiff meets the requirements." Bates v. United Parcel Serv., Inc., 511 F.3d 974, 985 (9th Cir. 2007).  Plaintiffs present evidence that their detainee-attorney calls were recorded without permission.  To the extent Securus argues that it did not violate § 636(a) because it purged the recordings, this argument should be raised in an appropriate motion.

### B. Class Definition

Plaintiffs seek to certify the following class—

> Every person who was a party to any portion of a conversation between a person who was in the physical custody of a law enforcement officer or other public officer in California, and that person's attorney, on a telephone number designated or requested not to be recorded, any portion of which was eavesdropped on or recorded [by Defendant Securus Technologies, Inc.][11] by means of an electronic device during the period from July, 10, 2008 to the applicable opt-out date, inclusive (the "Class Period").

(Doc. No. 122-1 at 8.)

### C. Rule 23(b)(3)

Plaintiffs seek class certification pursuant to Rule 23(b)(3).  Plaintiffs' CIPA claims meet the requirements of this rule.

---

[11] At oral argument, Plaintiffs confirmed that the class definition was only intended to reach persons whose communications were eavesdropped on or recorded by Securus.  Thus, Plaintiffs agreed to add the bracketed language at the court's suggestion.

### 1. **Predominance**

Common issues predominate over individual issues in this case. "The predominance analysis under Rule 23(b)(3) focuses on 'the relationship between the common and individual issues' in the case and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" <u>Wang v. Chinese Daily News, Inc.</u>, 737 F.3d 538, 544 (9th Cir. 2013) (quoting <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1022 (9th Cir. 1998)). The predominance requirement ensures that "common questions present a significant aspect of the case" such that "there is clear justification"—in terms of efficiency and judicial economy—for resolving those questions in a single adjudication. <u>Hanlon</u>, 150 F.3d at 1022 (citation omitted). This requirement is satisfied when a common nucleus of facts and law is the central feature of the litigation, and when the "[p]laintiffs have shown that there are plausible classwide methods of proof available to prove their claims." <u>Wolph v. Acer Am. Corp.</u>, 272 F.R.D. 477, 487 (N.D. Cal. 2011) (citation omitted).

Whether Securus recorded calls between detainees and attorneys without their permission is a class-wide question answered by common proof. The common proof offered by Plaintiffs is: (1) a series of email exchanges between the San Diego County Sheriff's Office and Securus employees indicating that Securus recorded a number of calls with attorney phone numbers designated as private and attached spreadsheets identifying the recorded calls (Doc. No. 62-4, Exh. 1); (2) Securus' discovery responses identifying detainee-attorney calls that were recorded; and (3) the declaration of Ian Jones, Securus Director of Support Services, stating that (a) Securus indefinitely maintains call detail reports that include the parties to the call, when and where the call took place, the time of initiating the call, and the duration of the call (Doc. No. 38-1, Jones Decl. ¶ 2), (b) Securus indefinitely maintains user activity logs, which show when phone numbers have been designated as private (<u>Id</u>. ¶ 4), and (c) the Sheriff's Office informed Securus that it recorded calls designated as private. (<u>Id</u>. ¶ 7.)

How and why Securus recorded detainee-attorney calls is also a question that may be answered by common proof. The email exchange between the Sheriff's Office and

Securus indicates that Securus did not know why detainee calls with private numbers were recorded, but in 2014, it invested significant resources in investigating the "root cause" of the issue. (Doc. No. 62-4, Exh. 1.) Assuming Securus identified the "root cause," the answer should explain how and why the calls were recorded in San Diego County, and whether the recording was intentional.

Securus makes numerous arguments in opposition. First, Securus argues that questions about "knowledge and consent" of individual participants to recorded calls will predominate over common questions of fact. Securus presents no evidence suggesting that issues of "knowledge and consent" must be addressed by individual inquiry. Questions about whether individuals knew that their calls were recorded may, for example, be answered by evidence that Securus never played a prompt informing call participants that the call was being recorded when the call involved a private number. Without any evidence that any detainee or attorney ever consented to the recording of their calls, the court need not assume that a detainee or attorney would consent to the recording of such privileged calls. See Reyes v. Educ. Credit Mgmt. Corp., 322 F.R.D. 552, 560-61 (S.D. Cal. 2017), appeal granted, No. 17-80199, 2017 WL 6762227 (9th Cir. Dec. 21, 2017) ("Moreover, [defendant] has not submitted other persuasive evidence of express consent or actual knowledge of recording during the Class Period followed by additional calls. The Court will therefore not presume that the need to resolve issues related to consent will defeat the predominance requirement.") (quotation marks and citation omitted).

Second, Securus argues that the question of whether it intentionally recorded calls will predominate over common questions of fact. Securus does not provide a factual basis for its argument that the answer to this question will require individualized inquiries. As noted above, the evidence before the court suggests the opposite—that common proof may indicate Securus did not know why any of the calls were recorded.

Third, Securus argues that a damages award would require individualized inquiries into the severity of any CIPA violation as Penal Code § 637.2 requires award of "the greater" of actual damages or a $5,000 statutory penalty. Section 637.2 provides:

(a) Any person who has been injured by a violation of this chapter may bring an action against the person who committed the violation for the greater of the following amounts: (1) Five thousand dollars ($5,000) per violation. (2) Three times the amount of actual damages, if any, sustained by the plaintiff.

…

(c) It is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages.

A plaintiff may recover a minimum of $5,000 for a violation of the CIPA, or actual damages. Here, Plaintiffs seek statutory damages. Securus cites no authority for the proposition that § 637.2 requires a plaintiff to seek actual damages, instead of statutory damages, if they exceed $5,000.

Fourth, Securus argues that Plaintiffs produce no evidence of the actual parties to the call—only the detainee name and a phone number associated with an attorney. (Doc. No. 124 at 15 n.6.) This argument was rejected in the standing section above. <u>Supra</u>, Section III.A.

Fifth, Securus argues that over 100 of the calls identified in Exhibit A lasted fewer than 90 seconds, with numerous calls lasting even less than 2 seconds. (Doc. No. 124 at 15-16.) Securus argues that "[c]allers may have hung up before speaking with anyone, been sent to voicemail, spoken to someone other than an attorney, or experienced a variety of other scenarios that would not trigger liability." <u>Id</u>. Participants to a conversation that lasts less than 90 seconds may communicate privileged information. Substantive, privileged information may be communicated in only a few seconds. Securus does not identify how many calls lasted less than a few seconds and identifies only 15 calls that have no duration. (<u>Id</u>.) The issue of whether some calls did not connect to an attorney or detainee because they lasted less than a few seconds or had no duration can be resolved on common proof as the call logs identify the duration of every call.

**2. <u>Superiority</u>**

The court previously denied Plaintiffs' motion for class certification on the ground that Plaintiffs failed to present sufficient evidence to show that there was an

administratively feasible manner to determine whether a class action is the superior method for prosecuting Plaintiffs' claims. (Doc. No. 93 at 4-5.) In their renewed motion, Plaintiffs identify a class with at least 246 members. This evidence is sufficient to demonstrate that a class action is superior to other available methods of litigation and would likely achieve substantial administrative and management efficiencies.

"Rule 23(b)(3) requires that a class action be 'superior to other available methods for fairly and efficiently adjudicating the controversy,' and it specifically mandates that courts consider 'the likely difficulties in managing a class action.'" Briseno, 844 F.3d at 1227-28 (quoting Fed. R. Civ. P. 23(b)(3)(D)). Thus, concerns about the ascertainability of a class may be addressed in the context of Rule 23(b). Id. See also Pierce v. County of Orange, 526 F.3d 1190, 1200 (9th Cir. 2008) (Rule 23(b) does not offer "a superior method for fair and efficient adjudication in light of expected difficulties identifying class members").

Plaintiffs represent that they have now identified at least 220 attorney and 930 detainee class members. First, Plaintiffs argue that a spreadsheet Defendant produced, STI_000004, identifies 698 detainees and 222 attorneys whose calls were recorded without their permission. The parties dispute what STI_000004 represents. [12] The court does not

_____

[12] In its November 28, 2017 supplemental responses, Defendant identified STI_000004 as responsive to Plaintiffs' request for production of documents "identifying any DETAINEE who was a party to any telephone call to or from a PRIVATE NUMBER between such DETAINEE and an ATTORNEY, any portion of which was recorded by YOUR SYSTEM." (Doc. No. 122-7, Exh. D at 17.) Plaintiffs argue that Defendant's November 28, 2017 supplemental response confirms that STI_000004 reflects private telephone numbers whose calls were recorded. (Doc. No. 122-1 at 13 n.4.) Securus argues that STI_000004 is not a call log and does not represent any call recordings. (Doc. No. 124 at 17.) Instead, Ankur Desai, Director of Call Center Subsidiaries at Securus Technologies, Inc., declares that STI_000004 "reflects some, but not all, active phone numbers designated within Securus as 'private' at the time of its creation [in 2014]." (Doc. No. 124-1, Desai Decl. ¶ 3.) Defendant represents that it only produced STI_000004 because it was attached to an email string with content that was otherwise responsive to Plaintiffs' document request. (Doc. No. 124 at 17.) Neither party attached STI_000004 to their pleadings.

rely on this disputed spreadsheet, which is not included in the moving or opposition papers, in reaching its decision.

Second, Plaintiffs identify 232 detainee and 14 attorney class members from the Sheriff's Office's[13] and Defendant's[14] responses to Plaintiffs' discovery requests. This evidence is sufficient to establish that the class will likely include hundreds of detainee and attorney members, weighing in favor of class adjudication. In addition, in light of Plaintiffs' evidence they were not warned that their calls would be recorded, a significant number of class members may not know that their calls were recorded. Thus, a class action is superior to other available methods of litigation and would likely achieve substantial administrative and management efficiencies.

### D. Rule 23(b)(2)

Plaintiffs' requests for injunctive and declaratory relief meet the requirements of Rule 23(b)(2). Rule 23(b)(2) provides for class certification when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). This provision "applies 'when a single injunction or

---

[13] Plaintiffs represent that a review of documents produced by the Sheriff's Office in response to Plaintiffs' third party subpoena produces 93 discrete detainees whose calls with attorneys were recorded without their permission. (Doc. No. 122-1 at 12.) As discussed above, the Sheriff's Office sent Securus spreadsheets identifying recorded calls between detainees and numbers designated as private. (Doc. No. 62-2, Teel Decl.; Doc. No. 62-4, Exh. 1.)

[14] Defendant produced a spreadsheet, "Exhibit A," in response to Plaintiffs' interrogatory requesting Defendant "IDENTIFY all PERSONS who were a party to any telephone call conversation made to or from a PRIVATE NUMBER to or from a DETAINEE, any portion of which was recorded by YOUR SYSTEM during the CLASS PERIOD." (Doc. No. 74-1, Teel Decl. ¶¶ 2, 3.) Exhibit A lists the facility site name, called telephone number, call start and end time, call duration, first and last name of the detainee, and whether the number was flagged as private. (Doc. No. 74-2, Exh. 1 at 20-32.) From this list, Plaintiffs count 153 detainees who participated in a call with a telephone number flagged as private.

declaratory judgment would provide relief to each member of the class.'" Wang, 737 F.3d at 544 (citing Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 360 (2011)).

Plaintiffs seek to "enjoin[ ] Securus from eavesdropping on, listening to, recording, disclosing, or using private, confidential, and privileged communications between detainees and their attorneys without permission of all parties" and a court order requiring "Securus to identify, seek, obtain, encrypt, and ultimately destroy at the conclusion of this action all existing recordings in their possession or the possession of third parties to whom they have given access or disclosed unlawfully recorded communications." (TAC ¶¶ 118-119.) Plaintiffs also seek declaratory relief "declaring Securus' practice of eavesdropping on, listening to, recording, disclosing, or using private, confidential, and privileged [sic] between detainees and their attorney without permission of all parties unlawful." (Id. ¶ 117.)

Plaintiffs' requested relief would address the class as a whole without individualized inquiries. Plaintiffs provide evidence that Securus recorded detainee-attorney calls without their permission. The proposed class includes similarly situated detainees and attorneys who use Securus' communications system and whose calls were recorded without their permission. Declaratory relief provides the basis for an injunction and statutory damages. An injunction prohibiting Securus from eavesdropping on, listening to, recording, disclosing, or using communications between detainees and their attorneys without their permission would prevent an issue similar to the one presented here from recurring. It would benefit all members of the class.

Securus argues that the request for injunctive relief is moot because Plaintiffs Romero and Tiscareno are no longer incarcerated and Securus corrected "the glitch several years ago with no known recurrence since that time." (Doc. No. 124 at 27.) The court already rejected Securus' argument that Plaintiffs lack standing as Romero and Tiscareno are no longer incarcerated. (Doc. No. 21 at 9 n.7) ("While Plaintiffs Romero and Tiscareno may no longer be incarcerated, Plaintiff Elliott, as a criminal defense attorney, may require Defendant's services to communicate with other clients in the future.") The court also

rejects Securus' argument that the issue was corrected. "A defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case." <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.</u>, 528 U.S. 167, 174 (2000). "For mootness to apply based on the voluntary cessation of the complained of unlawful behavior, the party must prove that subsequent events make it 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" <u>Reyes</u>, 322 F.R.D. at 569-70 (quoting <u>Id.</u> at 189). Securus does not explain what "the glitch" was, when it was fixed, or why there is no possibility of recurrence. Securus presents no evidence that the issue has been addressed, but simply asserts in its opposition (without supporting declarations) that Securus "corrected" the issue. Securus fails to demonstrate it is absolutely clear the issue will not recur.

Securus also argues that Plaintiffs primarily seek monetary damages, not injunctive relief. In cases "where a plaintiff seeks both declaratory and monetary relief, courts may certify a damages-seeking class under Rule 23(b)(3), and an injunction-seeking class under Rule 23(b)(2)." <u>Barrett v. Wesley Fin. Grp., LLC</u>, No. 13CV554-LAB (KSC), 2015 WL 12910740, at *7 (S.D. Cal. Mar. 30, 2015) (citing <u>Wang</u>, 737 F.3d at 544). <u>See also</u> <u>Raffin v. Medicredit, Inc.</u>, No. CV154912GHKPJWX, 2017 WL 131745, at *10 (C.D. Cal. Jan. 3, 2017) (certifying Cal. Penal Code § 637.2 claim for injunctive relief under (b)(2) and the claim for monetary relief under (b)(3)). The court finds it appropriate to certify a class for injunctive relief pursuant to Rule 23(b)(2) because "a single injunction or declaratory judgment would provide relief to each member of the class." <u>Dukes</u>, 131 S. Ct. at 2557.

### E. Rule 23(a) Prerequisites

#### 1. <u>Numerosity</u>

The numerosity requirement is met. Rule 23(a)(1) requires the proposed class be "so numerous that joinder of all members is impracticable." Although there is no absolute threshold, courts generally find numerosity satisfied when the class includes at least forty members. <u>Gomez v. Rossi Concrete, Inc.</u>, 270 F.R.D. 579, 588 (S.D. Cal. 2010); <u>Celano v. Marriott Int'l, Inc.</u>, 242 F.R.D. 544, 549 (N.D. Cal. 2007) ("[C]ourts generally find that

the numerosity factor is satisfied if the class comprises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer."). As discussed above, Plaintiffs identify 246 potential class members. Joinder of this many plaintiffs would be impracticable.

### 2. **Commonality**

The commonality requirement is met. Rule 23(a)(2) requires a party to demonstrate that there are "questions of law or fact common to the class." "So long as there is 'even a single common question,' a would-be class can satisfy the commonality requirement of Rule 23(a)(2)." Wang, 737 F.3d at 544 (citing Dukes, 564 U.S. 338)). "The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3)," that is, the "predominance" inquiry that requires that "common questions 'present a significant aspect of the case.'" Hanlon, 150 F.3d at 1022 (citation omitted). As discussed above, common issues dominate this litigation.

### 3. **Typicality**

The named Plaintiffs' claims are typical of the class. Like all class members, Plaintiffs' confidential calls were recorded by Securus without their permission. Securus argues that the named Plaintiffs declared that they did not receive a warning or phone prompt indicating that their calls would be recorded, but there is evidence of "a 'generic prompt' on phone calls not designated as private that 'states the call is being recorded.'" (Doc. No. 124 at 22.) "Because Plaintiffs have produced no evidence that the accidentally recorded calls also failed to include this generic prompt, their assertions that they did not receive the prompt is actually strong evidence that their calls were not recorded." (Id.) (emphasis in original.) Securus' argument is unpersuasive. Plaintiffs allege that Securus recorded calls with telephone numbers that were designated as private. Securus argues that a "generic prompt" played on calls not designated as private. Whether the "generic prompt" played may indicate whether a telephone number was designated as private, but not whether it was recorded.

///

### 4. **Adequacy**

The named Plaintiffs and class counsel will fairly and adequately protect the interests of the class. As discussed above, Plaintiffs' claims are typical of the class. Class counsel support their motion with declarations detailing their qualifications and experience with class actions. (Doc. Nos. 62-45, 62-48, 122-2, 122-8, 122-13.)

Securus argues that Plaintiffs' new lawyers do not have experience representing classes. The declarations of Plaintiffs' counsel indicate that, as a whole, they have extensive experience both defending against and representing classes. (See, e.g., Doc. No. 62-45, Marron Decl.).

Securus argues that Plaintiffs' counsels' representation thus far demonstrates their inadequacy, citing to missed deadlines and other unfavorable rulings. Counsels' actions do not rise to the level of disqualifying them from representing a class. Cf. Wrighten v. Metropolitan Hospitals, Inc., 726 F.2d 1346, 1352 (9th Cir. 1984) (denying class certification in part because counsel's "pleadings and interrogatories had an 'assembly line' quality that suggested something less than the forthright and vigorous approach required of counsel in class actions").

Lastly, Securus argues that the attorneys from Foley create an appearance of divided loyalties because the law firm defends against class actions.[15] Securus cites to cases in which Foley represented "a competitor of Securus" who also provides inmate calling

---

[15] Securus requests the court take judicial notice of public court documents filed in matters litigated by Plaintiffs' counsel. (Doc. No. 124-3.) The court grants this request as the filings are not subject to reasonable dispute because they are generally known or are capable of accurate and ready determination. See Fed. R. Evid. 201(b); Lee v. City of Los Angeles, 250 F.3d 668, 689-90 (9th Cir. 2001); United States v. Ritchie, 342 F.3d 903, 909 (9th Cir. 2003) (courts may take judicial notice of "the records and reports of administrative bodies").

services for correctional facilities.[16]  These cases do not involve allegations relating to the recording of telephone calls.[17]  The court finds counsel adequate to serve as a class counsel.

### F. Certification of All Claims

Securus argues that Plaintiffs failed to present evidence to support class certification for claims other than their CIPA claims.  In addition to their CIPA claims, Plaintiffs assert five other causes of action in the operative Third Amended Complaint: (1) unfair competition, violation of Cal. Bus. & Prof. Code §§ 17200, et seq.; (2) concealment; (3) fraud; (4) negligence; and (5) unjust enrichment.  In their reply brief, Plaintiffs argue that all of their other claims "in part stem from Securus' violation of CIPA."  (Doc. No. 128 at 13.)

The court agrees with Securus.  A court may certify a class for specific claims, issues, or defenses.  See Fed. R. Civ. P. 23(c)(1)(B) ("An order that certifies a class action must define the class and the class claims, issues, or defenses…").  Plaintiffs cite no authority for the proposition that claims may be certified when they stem "in part" from a certified claim.  Nor do Plaintiffs discuss in their motion whether their other claims will require individualized inquiries, such as inquiries into damages, reliance, or misrepresentations.  See, e.g., Mazza v. Am. Honda Motor Co., 666 F.3d 581, 596 (9th Cir. 2012).  In their reply brief, Plaintiffs raise a handful of "examples" of possible common issues without supporting evidence.  (Doc. No. 128 at 13.)  Plaintiffs fail to meet their

---

[16] Securus argues that Foley counsel in this matter also represented Global Tel*Link, another company that provides inmate calling services for correctional facilities.  (Doc. No. 124-3, Request for Judicial Notice at 2, 18.)

[17] Securus' citation to a reply brief filed in an unrelated case that argued the Foley counsel was not adequate counsel is also unpersuasive.  In this case, the court rejected the plaintiffs' motion and argument.  Gonzalez et al v. CoreCivic, Inc., 17cv2573 JLS (NLS), Doc. No. 44 at 10 (S.D. Cal. April 4, 2018) ("The Court is under no illusion as to the stakes of this Motion.  Gonzalez Plaintiffs filed a nearly identical cause of action as the Owino Plaintiffs, seek to consolidate the cases, and wrest control of interim class counsel from the Owino Plaintiffs.").

burden to establish that the requirements of Rule 23(a) and (b)(3) are satisfied for claims other than their CIPA claims.

**IV. Conclusion**

Plaintiffs' requests for monetary damages under CIPA are certified pursuant to Rule 23(b)(3) and their requests for injunctive and declaratory relief are certified pursuant to Rule 23(b)(2). The following class is certified—

> Every person who was a party to any portion of a conversation between a person who was in the physical custody of a law enforcement officer or other public officer in California, and that person's attorney, on a telephone number designated or requested not to be recorded, any portion of which was eavesdropped on or recorded by Defendant Securus Technologies, Inc. by means of an electronic device during the period from July, 10, 2008 to the applicable opt-out date, inclusive (the "Class Period").

The Law Office of Robert L. Teel, the Law Offices of Ronald A. Marron, APLC, and Foley & Lardner, LLP are appointed as class counsel and Plaintiffs Juan Romero, Frank Tiscareno, and Kenneth Elliot are appointed as class representatives.

IT IS SO ORDERED.

DATED: November 21, 2018

JEFFREY T. MILLER
United States District Judge