UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN ROMERO, FRANK TISCARENO, and KENNETH ELLIOTT on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SECURUS TECHNOLOGIES, INC.,<br><br>Defendant. | Case No.: 16cv1283 JM (MDD)<br><br>**ORDER ON MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ORDER ON MOTION FOR COSTS, INCENTIVE AWARDS, AND ATTORNEYS' FEES** |

Plaintiffs Juan Romero, Kenneth Elliott, and Frank Tiscareno ("Plaintiffs"), on behalf of themselves and the class they represent, move for final approval of a class action settlement reached with Defendant Securus Technologies, Inc. ("Securus"). (Doc. No. 179.) Plaintiffs also move for litigation costs, incentive awards, and attorneys' fees. (Doc. No. 181.) Neither motion is opposed. A final approval hearing on the motions was held on November 9, 2020, with counsel for Plaintiffs and Securus appearing telephonically. No class members appeared. For the reasons set forth below, the Motion for Final Approval of Class Action Settlement is **GRANTED**. The Motion for Costs, Incentive Awards, and Attorneys' Fees is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

On May 27, 2016, Plaintiffs filed a putative class action lawsuit alleging that Securus unlawfully recorded calls between detainees and attorneys. Securus provides inmate communication services for correctional facilities throughout California. Plaintiffs are two former inmates and a criminal defense attorney who used Securus' telephone services to make calls to and from correctional facilities and whose calls were recorded. After the court partially granted two successive motions to dismiss, Plaintiffs filed the operative Third Amended Complaint, which alleges claims for violation of the California Invasion of Privacy Act (CIPA) and violation of the California Business and Professions Code § 17200 *et seq.*, as well as for concealment, fraud, negligence, and unjust enrichment. (Doc. No. 30.)

On October 10, 2017, Plaintiffs moved for class certification. (Doc. No. 62.) On April 12, 2018, the court denied Plaintiffs' motion for class certification without prejudice because Plaintiffs "fail[ed] to present sufficient evidence . . . . that there is an administratively feasible manner to determine whether a class action is the superior method for prosecuting Plaintiffs' claims." (Doc. No. 93 at 5.) The court found the class could be as small as 22 members or as large as thousands, and numbers at the low end might not produce efficiencies from class litigation. (*Id.* at 5-6.) The court allowed Plaintiffs to renew their motion within 90 days notwithstanding expiration of the deadline for discovery on class certification issues. (*Id.* at 6.)

On May 22, 2018, Plaintiffs moved for summary judgment on the issue of whether their CIPA claim required proof of intent. (Doc. No. 101.) On July 11, 2018, Plaintiffs also filed a renewed motion for class certification. (Doc. No. 122-1.) On November 21, 2018, the court issued an order resolving both motions. (Doc. No. 141.) The court denied Plaintiffs' motion for partial summary judgment because it found that CIPA is not a strict liability statute, and because Plaintiffs failed to establish that there is no genuine dispute of material fact as to whether Securus had the necessary intent. (*Id.* at 19.) However, the court partially granted Plaintiffs' renewed motion for class certification. (*Id.* at 33-34.)

The court certified a class for Plaintiffs' CIPA claim, but denied class certification for each of Plaintiffs' other claims. *Id.* Thereafter, the parties participated in two day-long mediation sessions with The Honorable Leo S. Papas (retired), first on October 3, 2018 and again on August 16, 2019.

On December 3, 2018, Plaintiffs filed an interlocutory request with the Ninth Circuit to appeal the denial of their motion for partial summary judgment, which was denied. (Doc. Nos. 143, 149.) Additionally, Plaintiffs and Securus petitioned the Ninth Circuit for review of the district court's class certification order. (Doc. Nos. 144, 145.) Plaintiffs sought review of the district court's denial of class certification as to all claims except their CIPA claim, arguing that they were based on the same central question and common proof. (Doc. No. 144.) Securus sought review of three questions: (1) whether the court could certify class claims without any evidence that Securus had a common, class-wide intention about recording telephone calls; (2) whether class litigation was superior to other forms of litigation in this case; and (3) whether the court had the authority to grant Plaintiffs' motion for class certification after having denied Plaintiffs' first motion for class certification. (Doc. No. 145.) Securus also argued that the district court erred because it misapplied the law governing allegations of improperly recorded calls after 2014. *Id.* On February 27, 2019, the Ninth Circuit denied Plaintiffs' petition to hear the case, but granted Securus' petition. (Doc. Nos. 155-56.) The action was stayed in the district court pending Securus' appeal. (Doc. No. 168.)

Following the Ninth Circuit's grant of review of Securus' petition, the Ninth Circuit appointed a mediator. After multiple status conferences with the mediator, a settlement agreement was reached. On March 12, 2020, the Ninth Circuit dismissed the appeal without prejudice pending approval of the settlement by the district court. On May 18, 2020, Plaintiffs filed a motion for preliminary approval of the class action settlement, (Doc. No. 175), which the court granted, (Doc. No. 178). In its June 16, 2020 order preliminarily approving the parties' settlement agreement, the court approved the following class definition:

> Every person who was a party to any portion of a conversation between a person who was in the physical custody of a law enforcement officer or other public officer in California, and that person's attorney, on a telephone number designated or requested not to be recorded, any portion of which was eavesdropped on or recorded by Defendant Securus Technologies, Inc. by means of an electronic device during the period July 10, 2008 through June 16, 2020.

(Doc. No. 178 at 16.)[1]

## II. SETTLEMENT AGREEMENT TERMS

In the settlement agreement, Plaintiffs waive their individual claims and their claims for monetary damages. (Doc. No. 179-3 at 7 ¶ III.A.) In exchange, Securus agrees that within six months after final approval it will: (1) make available to its customers a no-cost "private call" option for approved numbers; (2) implement message prompts advising callers whether the call will be recorded; and (3) post on its website information about designating numbers as approved. (*Id.* at 7-8 ¶¶ III.E.1-3.) Additionally, within 12 months of final approval, Securus will provide Plaintiffs' counsel with bi-annual declarations describing Securus' compliance. (*Id.* ¶ III.E.4.) Finally, Securus agrees to pay each Plaintiff a service award of up to $20,000, as well as attorneys' fees and costs up to $840,000, both subject to court approval. (*Id.* ¶¶ III.F-G.) Securus also agrees not to oppose Plaintiffs' motion for costs, service awards, and attorneys' fees. (*Id.*) The settlement agreement provides no monetary relief for class members, but class members do not waive their right to seek monetary damages.

## III. DISCUSSION

### A. Rule 23(a) Requirements

Before approving a class action settlement, the court's "threshold task is to ascertain whether the proposed settlement class satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure applicable to class actions, namely: (1) numerosity,

---

[1] This class definition is consistent with the class as defined in the settlement agreement.

(2) commonality, (3) typicality, and (4) adequacy of representation." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). In the settlement context, the court "must pay undiluted, even heightened, attention to class certification requirements." *Id.* In addition, the court must determine whether class counsel is adequate under Rule 23(g). *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000).

### 1.     Numerosity

The numerosity requirement is satisfied if the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "A class greater than forty members often satisfies this requirement[.]" *Walker v. Hewlett-Packard Co.*, 295 F.R.D. 472, 482 (S.D. Cal. 2013) (citation omitted). Additionally, in cases involving injunctive relief only, the numerosity requirement may be relaxed. *See Reynoso v. RBC Bearings, Inc.*, Case No. SACV 16-01037 JVS (JCGx), 2017 WL 6888305, at *5 (C.D. Cal. Oct. 5, 2017), *decertified on other grounds by Reynoso v. All Power Mfg. Co.*, No. SACV 16-01037 JVS (JCGx), 2018 WL 5906645, at *6 (C.D. Cal. Apr. 30, 2018). Here, the court previously found that joinder of the 246 potential class members identified by Plaintiffs would be impracticable. (Doc. No. 141 at 30-31.) Now, the class list provided by Securus to the notice administrator included 142,314 individuals. (Doc. No. 179-1 at 23.) Accordingly, the numerosity requirement is satisfied.

### 2.     Commonality

The commonality requirement is satisfied if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "To satisfy this commonality requirement, plaintiffs need only point to a single issue common to the class." *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 114, 1121 (E.D. Cal. 2009). Here, as the court previously found, there are two class-wide questions that could be answered by common proof: (1) "[w]hether Securus recorded calls between detainees and attorneys without their permission," and (2) "[h]ow and why Securus recorded detainee-attorney calls." (*Id.* at 24.) These issues would not change if the case were to proceed to trial. (*See* Doc. No. 179-1 at 23.) Accordingly, the commonality requirement is satisfied.

### 3. Typicality

The typicality requirement is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation and citation omitted). Here, as the court previously found, "[l]ike all class members, Plaintiffs' confidential calls were recorded by Securus without their permission," (Doc. No. 141 at 31), which is the basis for Plaintiffs' and class members' claims. Thus, Plaintiffs' claims are typical of those of the class.

### 4. Adequacy

The final Rule 23(a) requirement is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requires the court to address two questions: "(a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class." *Mego*, 213 F.3d at 462. A court certifying a class must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Here, there is no indication of a conflict of interest between Plaintiffs or their attorneys and absent class members. (*See* Doc. No. 179-1 at 16.) Although Plaintiffs seek service awards, they waive their claims for monetary damages, whereas class members do not. Plaintiffs declare they kept themselves informed about the status of proceedings, participated in lengthy mediations, and suffered the same injury as the absent class

members. (Id.)  With respect to Plaintiffs' counsel, the record is clear that settlement was negotiated by counsel with extensive experience in consumer class action litigation, that Plaintiffs' counsel engaged in substantial motions practice, made extensive discovery requests, and obtained sufficient information and documents to evaluate the strengths and weaknesses of the case. (*Id.* at 16-17.)  Accordingly, the adequacy requirement is satisfied.

### B.     Rule 23(b)(2) Requirements

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must show that the action is maintainable under Fed. R. Civ. P 23(b)(1), (2) or (3)." *Hanlon*, 150 F.3d at 1022.  Rule 23(b)(2) provides that a class action may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]"  Here, as the court previously determined, a single injunction provides relief to each member of the class. (Doc. No. 141 at 30 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011)).  "An injunction prohibiting Securus from eavesdropping on, listening to, recording, disclosing, or using communications between detainees and their attorneys without their permission would prevent an issue similar to the one presented here from recurring." (*Id.* at 29.)  Although there will be some variation as to whether Plaintiffs and class members will need to use Securus' services in the future, the injunctive relief is still "appropriate" and "generally" applies to the class given that they may need to use Securus' services in the future.  Plus, no objections have been filed.  Accordingly, Plaintiffs have satisfied the requirements for certification of a class under Rule 23(b)(2).

### C.     Rule 23(e)(2) Requirements

Rule 23(e)(2) provides that the court may approve a class action settlement "only after a hearing and only on a finding that it is fair, reasonable, and adequate after considering whether: (a) the class representatives and class counsel have adequately represented the class; (b) the proposal was negotiated at arm's length; (c) the relief provided for the class is adequate; [and] (d) the proposal treats class members equitably relative to

each other."[2] In making this determination, the court is required to "evaluate the fairness of a settlement as a whole, rather than assessing its individual components." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818-19 (9th Cir. 2012). Because a "settlement is the offspring of compromise, the question [to be] address[ed] is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027; *see also United States v. Armour & Co.*, 402 U.S. 673, 681 (1971) ("Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation.") The court's primary concern "is the protection of those class members, including the named [p]laintiffs, whose rights may not have been given due regard by the negotiating parties." *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted). Furthermore, there is a strong judicial policy in favor of settlement. *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).

### 1. Notice

Class members are entitled to receive the best notice practicable about the settlement. Fed. R. Civ. P. 23(c)(2). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. Notice should be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

---

[2] Adequacy of representation is discussed above.

As supported by a declaration from the settlement administrator, on July 9, 2020, the previously approved notice (*see* Doc. No. 178) was e-mailed to all 142,314 individuals who used Securus' phone system that were found in Securus' database of customers with an address in California, as well as those who were parties to a phone call to or from a facility in California, (Doc. No. 179-40). The e-mail from the settlement administrator provided those individuals with the notice and a link to a webpage maintained by the settlement administrator setting forth the notice and the settlement agreement. The notice included the date and time of the final approval hearing, how to object to the settlement and information about important dates and deadlines associated with the settlement. Of the 142,314 e-mails that were sent, 12,107 came back because of invalid e-mail addresses. On July 9, 2020, the notice was mailed, via U.S. First Class Mail, to the 12,107 individuals with invalid e-mails. In preparation for the mailing, all 12,107 individual names and addresses were processed against a national change of address database maintained by the U.S. Postal Service. No objections were filed by the August 21, 2020 deadline. Based on the above, the notice provided to the class members appears adequate.

### 2.     Arm's Length Negotiations

In *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009), the Ninth Circuit stated, "[w]e put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution." Plaintiffs argue that the proposed settlement is the product of informed arms-length negotiations because: (1) it was preceded by four years of adversarial litigation involving substantial discovery, including the exchange of multiple sets of written discovery and hundreds of documents; (2) there was extensive motion practice, including various discovery motions, a motion for partial summary judgment, two motions for class certification, and three petitions for interlocutory review; (3) at the time of settlement, Plaintiffs and their counsel had a full understanding of the strengths and weaknesses of Plaintiffs' claims and Securus' defenses, and were able to assess whether the change in business practices and injunctive relief would adequately benefit the class when weighed against the risks of continuing litigation; (4) the settlement was reached

after the parties participated in two in-person mediation sessions before an experienced mediator, and several months of continued settlement negotiations supervised by the Ninth Circuit Mediator; and (5) Plaintiffs' counsel are experienced in class action matters. (Doc. No. 179-1 at 17-18.) Additionally, Plaintiffs submit that the $900,000 in requested total costs, incentive awards, and fees was negotiated separately and only after the parties had reached agreement on the injunctive relief. (Doc. No. 181-1 at 13.) For these reasons, the settlement appears to be the product of arm's length negotiations. *See Mauss v. NuVasive, Inc.*, Case No.: 13cv2005 JM (JLB), 2018 WL 6421623, at *4 (S.D. Cal. Dec. 6, 2018) (finding no collusion based on extensive litigation, counsel's experience, and participation in mediation).

### 3. Adequacy of Relief

In deciding whether the relief provided for the class is adequate, the court takes into account: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C); *see also Rodriguez*, 563 F.3d at 966 (risk, expense, complexity and duration of litigation supports the adequacy of relief).

Plaintiffs argue the costs, risks, and delays associated with a trial are significant because: (1) Securus has vigorously and continuously denied any wrongdoing, and absent settlement, Securus would continue to defend this action aggressively; (2) the Ninth Circuit could reverse the court's order granting class certification; (3) because Plaintiffs' theory of strict liability was rejected on summary judgment (and the Ninth Circuit denied Plaintiffs' petition for interlocutory review of this issue), Plaintiffs would have to prove scienter at trial, which would be difficult because Securus maintains that any call recordings resulted from a software glitch; and (4) if Plaintiffs prevailed, an appeal would likely follow. (Doc. No. 179-1 at 19-20.) Additionally, because the settlement agreement provides only injunctive relief that applies generally equally, there is no need for a method of distribution.

Also, the parties filed a detailed motion in support of the settlement agreement's terms regarding attorneys' fees and costs, (*see* Doc. No. 181), which is discussed below. Finally, to the extent that it needs to be disclosed under Rule 23(e)(3), Plaintiffs' attorneys disclose their agreement as to how an award of attorneys' fees will be divided amongst them. (*See* Doc. No. 179-1 at 21.) For these reasons, the relief appears adequate.[3]

### 4. Equitable Treatment

Plaintiffs argue the injunctive relief in the settlement will benefit each class member relatively equally. Here, there will likely be some variation as to whether class members enjoy the benefit of the injunctive relief because some class members will not need to use Securus' services again. But the injunctive relief benefits each class member relatively equally should they need to use Securus' services in the future. Additionally, no objections to the settlement were filed. *See DIRECTV*, 221 F.R.D. at 528-29 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."). Also, although the settlement agreement authorizes a service award for the named Plaintiffs, "the Ninth Circuit has recognized that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable." *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at \*9 (N.D. Cal. Apr. 29, 2011) (citing *Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003)). Accordingly, the injunctive relief appears to benefit each class member relatively equally.[4]

### D. Attorneys' Fees, Costs, and Service Awards

Plaintiffs seek approval of $813,541.04 in attorneys' fees, $26,458.96 in litigation costs, and up to $60,000 in incentive awards. (Doc. No. 181-1 at 6.) "While attorneys'

---

[3] Adequacy of representation is discussed above.

[4] The appropriateness of the amount of the service award is discussed below.

fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) ("*Bluetooth*") (citations omitted). Plaintiffs argue they are entitled to attorneys' fees under California's "private attorney general statute," CAL. CODE. CIV. PROC. § 1021.5. (Doc. No. 180-1 at 9-10.)

### 1. Lodestar Method

"The 'lodestar method' is appropriate in class actions brought under fee-shifting statutes . . . . where the relief sought – and obtained – is often primarily injunctive in nature and thus not easily monetized, but where the legislature has authorized the award of fees to ensure compensation for counsel undertaking socially beneficial litigation." *Bluetooth*, 654 F.3d at 941. As discussed further below, the California private attorney general statute authorizes the award of fees for socially beneficial litigation. *See* CAL. CIV. PROC. CODE § 1021.5. "Though the lodestar figure is 'presumptively reasonable,' the court may adjust it upward or downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors, 'including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.' Foremost among these considerations, however, is the benefit obtained for the class." *Bluetooth*, 654 F.3d at 941-42 (citations omitted).

Plaintiffs argue the total lodestar figure is $1,820,341 based on 2,866.66[5] hours of work, (Doc. No. 180-1 at 23-24), which averages out to $635 per hour. More specifically, nine lawyers and four paralegals at the Law Office of Ronald A. Marron ("the Marron Firm") claim $336,249 based on 589.3 hours of work (468.7 attorney hours and 120.6

---

[5] In their motion, Plaintiffs state that the total lodestar figure is "based on 974,804.95 hours of work," (*see* Doc. No. 181-1 at 24:3), which equals 111 years. Based on the information contained in supporting declarations, the correct total number of hours worked is 2,866.66.

paralegal and law clerk hours). (Doc. No. 181-2 ¶ 20.) Eight lawyers and three paralegals at Foley & Lardner claim $490,064.50 based on 884.7 hours of work (809.3 attorney hours and 75.4 paralegal and law clerk hours). (Doc. No. 181-6 ¶ 10.) Finally, Mr. Teel of the Law Office of Robert L. Teel claims $974,804.95 for 1,392.6 hours of work at $700 per hour. (Doc. No. 181-7 ¶ 13.) In the settlement agreement, however, the parties agreed to $813,541.04 in attorneys' fees, which, as Plaintiffs point out, represents a 55.3% decrease from the $1,820,341 loadstar figure. [6] (*See* Doc. No. 181-1 at 6, 23.) Plaintiffs' attorneys disclose that they agreed that $400,000 of the attorneys' fees award shall be allocated to Foley & Lardner, and the remainder will be split by the Marron Firm and the Law Office of Robert L. Teel. (*Id.* at 30.)

Based on the evidence available in the record, the quality of the representation appears adequate, if not more than adequate. Plaintiffs' attorneys were at least partially successful in avoiding or defending against motions to dismiss. (*See* Doc. No. 179-1 at 6-7.) They also engaged in substantial discovery and brought multiple motions in support of their discovery requests. (*Id.* at 7.) Plaintiffs' attorneys also successfully obtained certification of a class, and appealed the denial of their motion for partial summary judgment. (*Id.* at 8.) Finally, Plaintiffs' attorneys participated in multiple lengthy settlement discussions that were ultimately successful. (*Id.* at 9-10.)

The benefit obtained by the class might weigh more in favor of a downward adjustment, rather than an upward one, given that class members will receive no monetary relief, and will not directly benefit from the injunctive relief unless they need to use

---

[6] With respect to rates, Plaintiffs list hourly rates between $625 and $839 for seven partners, between $550 and $615 for three senior associates, $539 for one senior counsel, between $315 and $490 for six associates, and between $225 and $290 for four paralegals. (Doc. No. 181-1 at 25-26.) Plaintiffs support the reasonableness of their rates by attaching rate reports and surveys, as well as listing numerous cases in which similar rates were approved. To the extent that Plaintiffs' attorneys' rates are inflated, they are not likely inflated beyond 55.3%. Based on the reduced $813,541.04 figure, the average rate charged for 2,866.66 hours worked was $238.79, which is reasonable.

Securus' services for confidential calls in the future. However, a 55.3% downward adjustment has already been applied, and class members are not prohibited from seeking monetary damages. Additionally, the complexity and novelty of the issues presented weigh in favor of reasonableness. As described by Plaintiffs, "[t]his case . . . . takes place at the intersection where constitutional and civil rights meet law enforcement," which is not the typical consumer class action. (*Id.* at 7.) The risk of nonpayment accepted by Plaintiffs' attorneys also weighs in favor of reasonability because, as repeatedly pointed out by Plaintiffs, the Ninth Circuit might decertify their class, and they face a significant hurdle at trial of proving scienter. (*See* Doc. No. 181-1 at 23.) Overall, the lodestar method supports the reasonableness of the parties' agreement for $813,541.04 in attorney's fees.

## 2. California Private Attorney General Statute

As noted above, Plaintiffs argue they are entitled to attorneys' fees under California's private attorney general statute, CAL. CODE. CIV. PROC. § 1021.5. The statute provides that "[u]pon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest." *Id.* Accordingly, courts may award attorneys' fees in such cases if:

> (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any.

*Indep. Living Ctr. of S. California, Inc. v. Kent*, 909 F.3d 272, 283 (9th Cir. 2018) (citing *Maria P. v. Riles*, 43 Cal.3d 1281 (1987)).

### i. Successful Party

"In determining whether a plaintiff is a successful party for purposes of § 1021.5, 'the critical fact is the impact of the action, not the manner of its resolution.'" *Kent*, 909 F.3d 283 (citation omitted). To show success, the plaintiff must establish "(1) the lawsuit was a catalyst motivating the defendants to provide the primary relief sought; (2) that the

lawsuit had merit and achieved its catalytic effect by threat of victory, not by dint of nuisance and threat of expense . . . . and, (3) that the plaintiffs reasonably attempted to settle the litigation prior to filing the lawsuit." *Thomas*, 2019 WL 2590170, at *2 (citing *Tipton-Whittingham v. City of L.A.*, 34 Cal. 4th 604, 608 (2004)).

Here, Plaintiffs' lawsuit was likely a substantial factor in Securus' decision to make the specific changes to its procedures contained in the settlement agreement. *See Henderson*, 2013 WL 3146774, at *4 ("To be a catalyst, the lawsuit must have been 'a substantial causal factor' contributing to [d]efendant's conduct, though the lawsuit need not be the only cause of [d]efendant's conduct.") (citation omitted). Although Securus might have recognized and fixed the glitch that was allegedly responsible for the calls being recorded, nothing in the record suggests that Securus would have made the changes to its procedures regardless of the lawsuit, and the changes appear to entail much more than just fixing a technological glitch. Even if the procedural changes Securus agreed to make were only a minor inconvenience, nothing in the record suggests the case was settled for nuisance value or based on threat of expense. To the contrary, the case was litigated fervently by both sides for years. Finally, there is nothing in the record to suggest that Plaintiffs did not reasonably attempt to settle the litigation prior to filing their lawsuit. *See Thomas*, 2019 WL 2590170, at *7 (noting that the bar for this element is "not high").

### ii. Other Factors

Plaintiffs argue the injunctive relief provided in the settlement benefits both class members and the general public because it eliminates virtually all risk of an inadvertent recording of attorney-detainee phone calls, which protects the public's interest in safeguarding constitutional rights. (*See* Doc. No. 181-1 at 11.) Plaintiffs further argue that private enforcement and the resulting financial burden were necessary to obtain the relief given that Securus denied all liability. (*Id.*) The significant cut Plaintiffs' attorneys made to their lodestar also supports the appropriateness of the agreed upon fees.

Overall, the harms alleged by Plaintiffs were less likely to be resolved by means other than through private enforcement incentivized by the potential for an award of

attorneys' fees. The record shows no indication that a public entity or official pursued enforcement or litigation. The harm alleged here is also not strictly monetary, as it involves an alleged violation of constitutional rights. Accordingly, it appears to be in the interest of justice that attorneys' fees be awarded as consistent with California's private attorney general statute, CAL. CODE. CIV. PROC. § 1021.5.

### 3. Costs

Counsel for the class may also move for costs if they are a prevailing party. *See* Fed. R. Civ. P. 54(d)(1); CAL. CIV. PROC. CODE §§ 1032, 1033.5. Plaintiffs request $26,458.96 in litigation costs, which includes $3,229.27 in costs for the Marron Firm, $4,007.45 in costs for the Law Office of Robert L. Teel, and $19,222.25 in costs for Foley & Lardner. (*See* Doc. No. 181-2 ¶ 19.) The only support Plaintiffs provide for the reasonableness of their costs are declarations stating that "[a]ll of Counsel's expenses were reasonable and necessary for the successful prosecution of this case." (Doc. No. 181.1 at 14.) The Marron Firm's biggest expenses were process server fees ($1,305.30) and printer fees ($1,009.75). Mr. Teel's biggest expense was for travel ($2,358.13), and Foley & Lardner's biggest expenses were for mediation fees ($9,300), "Litigation Services – Hosting" ($5,400),[7] and electronic legal research ($1,960.70). These expenses, plus expenses for filing fees, shipping costs, and postage contained in counsels' detailed bills, are reasonably recoverable.

### 4. Incentive Awards

In class actions, incentive awards are fairly typical, discretionary, and "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to

---

[7] During the hearing, counsel explained that "Litigation Services – Hosting" referred to the cost of in-house storage of voluminous electronic discovery material, which counsel stated was relatively less expensive than other means of storing electronic material.

recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59. In deciding whether to approve incentive awards, courts consider:

> 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*See*, *e.g.*, *Moreno v. Beacon Roofing Supply, Inc.*, No. Case No.: 19cv185-GPC (LL), 2020 WL 3960481, at *5-6 (S.D. Cal. July 13, 2020) (*quoting Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995)).

Plaintiffs argue they are each entitled to a service award because: (1) each Plaintiff devoted between 24 to 42.5 hours to this case; (2) Plaintiff Tiscareno lost business after customers learned about his involvement with this action because it was easily discoverable through an internet search; (3) Plaintiff Elliott, a criminal defense attorney, spent time reviewing case files and travelling to detention facilities to meet in person with his clients rather than using Securus' services, which he could not bill for because he mostly charges a flat fee; (4) Plaintiff Romero's probation officer allegedly became angry when she found out about his involvement as lead class representative, asked his neighbors if he engaged in illegal activity, and was subsequently removed from his case; (5) Plaintiffs had a right to statutory damages of $5,000 per phone call under CIPA; and (6) Plaintiffs are the only members of the class that executed a release for monetary damages. (Doc. No. 181-1 at 17-20.)

At the outset, it should be noted that the settlement agreement provides that Securus will pay up to $20,000 to each Plaintiff as a service award. (Doc. No. 179-3 at 9.) In their motion for final approval, however, Plaintiffs state, "in light of the Court's concerns discussed at the preliminary approval hearing regarding the amount of the award, Plaintiffs each respectfully request a service award of $10,000 for their time and efforts in prosecuting the case." (Doc. No. 179-1 at 13.) Nonetheless, in their subsequently-filed motion for attorneys' fees, Plaintiffs again request $20,000 each. (Doc. No. 181-1 at 14.)

Plaintiffs also acknowledge that the time each Plaintiff devoted to this case does not, per se, warrant a $20,000 incentive award.  (*See* Doc. No. 181-1 at 21 ("Here, the amount of time Plaintiffs spent on the case might not equate to a $20,000 incentive award.").)

Here, Plaintiffs are entitled to $10,000 each because they waived their right to seek monetary and statutory damages whereas class members have not, and because they acted as private attorneys general in protecting the public's interest in constitutional rights.  Plaintiffs declare, and the court has no reason to disbelieve, that Plaintiffs would not have agreed to the settlement if the rest of the class members had been required to release their claims, and that Plaintiffs felt obligated to protect the constitutional rights of detainees.  Additionally, Securus consented to paying Plaintiffs service awards up to $20,000 each within 30 days of final approval, and Securus agreed not to oppose Plaintiffs' petition for service awards.  (*See* Doc No. 179-3 at 9 ¶ III.G.)  Plaintiff Tiscareno also provides some evidence showing that because of his involvement in this case, his status as a former inmate is more easily discoverable via the internet, and the same would be true for Plaintiff Romero.  With respect to Plaintiff Elliott, it is reasonable that he would incur some additional expense considering his involvement in this case, and as a result of his inside knowledge of this case.

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Approval of Class Action Settlement (Doc. No. 179) is **GRANTED**.  Additionally, Plaintiffs' motion for $840,000 in attorneys' fees and costs (Doc. No. 181) is **GRANTED**.  Plaintiffs' motion for $60,000 in incentive awards, however, is **DENIED IN PART**.  Instead, each of the three Plaintiffs is awarded $10,000 for a total of $30,000.  In their motion, Plaintiffs state "[t]o the extent the Court determines that the incentive award should be reduced, Class Representatives respectfully request that the remaining amount within the total settlement amount be applied to the costs incurred in the litigation for the benefit of all Class Members." (Doc. No. 181-1 at 7.)  This request is **DENIED**.  However, Plaintiffs are awarded ***an additional $30,000 in attorneys' fees*** for a total award of $870,000 in attorneys' fees and costs.

Additionally, pursuant to the Plaintiffs' request, (*see* Doc. No. 181-1 at 29), and to the extent the court is empowered to do so, the settlement administrator, ILYM Group, Inc., is authorized and ordered to establish, govern, and administer a qualified settlement fund under Internal Revenue Code § 468B for purposes of paying attorneys' fees to any attorney, but only such attorney who requests his/her share of any attorneys' fees awarded in this case be paid to and received by a qualified settlement fund. Additionally, the regulations accompanying Section 468B of Title 26 of the United States Code, as amended, shall be used in interpreting the fund in a manner to accomplish the intent of the parties that the fund be characterized as a qualified settlement fund under those regulations.

The court retains jurisdiction over this action for purposes of enforcing the parties' settlement agreement, but not for the purpose of hearing related individual claims by class members against Securus for monetary damages, violation of the CIPA, or otherwise. The parties need not present a final approval to the court order as set forth in paragraph VI.B.3 of the settlement agreement. The case is **DISMISSED WITH PREJUDICE** and judgment is hereby entered on the terms set forth above. The Clerk of the Court is directed to close the case.

IT IS SO ORDERED.

DATED: November 19, 2020

JEFFREY T. MILLER
United States District Judge